857 So.2d 980 (2003)
Jamie Scott NICHOLAS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4376.
District Court of Appeal of Florida, Fourth District.
October 29, 2003.
*981 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
This appeal arises from the entry of a final order violating Jamie Nicholas's probation after he was stopped for DUI. Nicholas filed a motion to suppress the stop. That motion was denied and Nicholas admitted the violation while reserving the right to appeal the suppression issue. We find that the trial court erred in denying the motion to suppress and hereby reverse the order of the trial court.
"[A] trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Pagan v. State, 830 So.2d 792 (Fla.2002). However, a defendant is entitled to a de novo review of whether the application of the law to the facts establishes an adequate basis for the trial court's finding of probable cause. Donaldson v. State, 803 So.2d 856 (Fla. 4th DCA 2002).
At the hearing, Deputy Moore testified on behalf of the state. Moore explained that he noticed Nicholas's vehicle because Nicholas made a left hand turn from a right hand lane. Moore explained that the roadway Nicholas was driving northbound on had two lanes, one turning lane and another lane that continued heading north. Moore was driving about two car lengths behind Nicholas when he saw Nicholas make the left hand turn, without signaling, from the right hand lane. Moore acknowledged that he observed Nicholas for a very short period of time and that Nicholas did not interfere with any traffic.
"[A] police officer can stop a driver based on a founded suspicion that the driver is under the influence, even where the driver is not committing a separate traffic offense." Roberts v. State, 732 So.2d 1127, 1128 (Fla. 4th DCA 1999). In Roberts, this court determined that an officer had the reasonable suspicion necessary to pull the defendant over where the officer observed the defendant weaving significantly from side to side within the lane but not crossing over the lines.
In Department of Highway Safety & Motor Vehicles v. DeShong, 603 So.2d 1349 (Fla. 2d DCA 1992), the second district explained:
The courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior.
Id. at 1352.
In DeShong, a sheriff followed the defendant for a period of time to check for a possible DUI offense. The sheriff observed the defendant use lane markers to position his vehicle. He then observed the defendant abruptly slow from 55 to 30 miles per hour and then accelerate rapidly for no apparent reason. The sheriff stopped the vehicle because he found the driving behavior "erratic." The second *982 district determined that the driving behavior was sufficient to establish a founded suspicion and to validate a DUI stop. Id. at 1352.
The opposite conclusion was reached in Donaldson, where this court found that an officer did not satisfy the "founded suspicion" requirement to effectuate a valid stop for DUI. Donaldson, 803 So.2d 856. This court distinguished Donaldson from DeShong by pointing out that the officer only observed Donaldson squealing his tires but did not observe any erratic driving over a period of time. Further, the opinion noted that there were no other cars on the road or in the parking lot that would have been endangered by the squealing tires. Thus, the opinion concluded, "there was no evidence that Appellant drove in a sufficiently unsafe manner to validate a DUI stop." Donaldson, at 860.
The issue presented in this case is whether Nicholas's turn from the wrong lane amounts to erratic driving. In Donaldson, the court determined that squealing tires does not amount to erratic driving while changing the speed of travel and marking the position of the vehicle via the lane markers was considered erratic driving in DeShong. See also Jordan v. State, 831 So.2d 1241 (Fla. 5th DCA 2002) (Officer's testimony that vehicle crossed over traffic line three times did not establish an erratic driving pattern.); Dep't of Highway Safety and Motor Vehicles v. Nikollaj, 780 So.2d 943(Fla. 5th DCA 2001) (Defendant stopped for erratic driving after officer observed him driving his car down a concrete median approximately 25 feet, and then running a red light.).
The state relies on Roberts. In Roberts this court reasoned that the defendant's "continuous weaving, even if only within her lane, during the time that she was being followed presented an objective basis for suspecting that she was under the influence." Roberts, 732 So.2d 1127, 1128. However Roberts is readily distinguishable from the case at bar. Initially, we note that Roberts is procedurally distinguishable from the case at bar in that it was a denial of a petition for certiorari. "Certiorari is not intended to provide the petitioner with a second appeal, and this court should exercise its discretion only when there has been a violation of clearly established principles of law resulting in a miscarriage of justice." Id. (citing Combs v. State, 436 So.2d 93 (Fla.1983)). Further, we find Roberts factually unpersuasive as the opinion does not note the length of time the defendant was observed or if the erratic driving interfered with any traffic.
The facts and posture of this case are most akin to the facts of Donaldson. This court pointed out in Donaldson that the defendant had not been observed for any period of time, nor was anyone around that was endangered by the defendant's actions. The same can be said about the case at bar. Here, Moore acknowledged that he observed Nicholas for a very short period of time and that Nicholas did not interfere with any traffic.
To conclude, we recognize that there is no statutory definition of erratic driving and it is necessarily determined on a case by case basis. However, in light of the case law on point discussed above, and the facts of this case, we hold that Nicholas's turn did not amount to erratic driving. As a result, officer Moore did not have a founded suspicion that Nicholas was under the influence. The stop was therefore improper as was the subsequent denial of the motion to suppress. The trial court's order is reversed.
REVERSED.
*983 POLEN and KLEIN, JJ., concur.
STEVENSON, J., concurs specially with opinion.
STEVENSON, J., concurring specially.
I concur in the majority decision. I write only to emphasize that, based on the record, there was no indication that appellant's left turn was a "traffic offense" which would have independently justified a stop of the vehicle. The arresting officer, Deputy Moore, described the turn as follows:
Q. [Defense Counsel] Okay. Would you agree with me that at some point when he made the left turn he hadhis vehicle had to be in the left-turn lane?
A. [Deputy Moore] He certainly drove across that lane, correct.
Q. Okay. So he went from the northbound lane into or across as you said the left-turn lane and into the Pineapple Discount Beverage, correct?
A. He made a left turn from the right lane crossing the left-turn lane, yes.
When asked if the turn was illegal, Deputy Moore testified: "Uh, not actually that I'm aware of, no."
During argument on the motion to suppress, defense counsel pressed her argument that appellant had not committed any traffic infraction by making the turn in the manner in which he did. Below, and on appeal, the State did not respond to this argument, but maintained that appellant's driving was "erratic." Thus, on appeal, our sole focus is whether appellant's driving was so "erratic" as to suggest intoxication. As the majority opinion indicates, it was not.