DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**D.T.,** a Child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-781

[November 12, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case Nos. 13CJ002793AMB, 13CJ002794AMB, and 14CJ000080AMB.

Carey Haughwout, Public Defender, and Zainabu Rumala, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant D.T., a child, appeals the denial of his motion to suppress before being adjudicated delinquent for possession of cocaine. The trial court found that the arresting officers had reasonable suspicion to support an investigatory stop of Appellant, which resulted in the discovery that he was in possession of cocaine. As set forth below, we affirm.

## Background

Appellant was observed meeting with a known prostitute and drug user by two Palm Beach County Sheriff's officers. The officers saw the two proceed together into the area of three abandoned homes. The officers then saw Appellant walking out of the back door of an abandoned home which they knew to be part of the "Board and Secure" program.[1] The

---

[1] The Officers testified that the "Board and Secure" program is so named because, when a building has an orange tag placed on it, the building is supposed to be secured and the windows boarded up.

officers testified that they were familiar with the area as a suspected high-crime area. The property was tagged by the Lake Worth City Code Inspector with an orange sign on the front of the building that said, "Pursuant to the City of Lake Worth Code section 2-75.2.5 . . . , it is unlawful for any person to enter or occupy this building and violators are subject to arrest."

When the officers encountered Appellant, the latter made eye contact with one of the officers, "jolted back, [and] immediately started reaching his hands into his pockets and fidgeting around." The officer then ordered Appellant to take his hands out of his pockets. Appellant obeyed, and as he took his hands out of his pockets, the officer saw a small object drop to the ground. After Appellant was handcuffed, a twenty-dollar bill and a bag of cocaine were found on the ground where he was standing. Consequently, Appellant was charged with one count of possession of cocaine.

In response to Appellant's motion to suppress, the State argued that reasonable suspicion existed to support the investigatory stop because Appellant was seen walking to and coming out of an abandoned property that was part of the "Board and Secure" program and where there was suspected criminal activity, accompanied by a woman with a prior criminal history. The trial court denied Appellant's motion and he was found guilty.

**Analysis**

When reviewing a denial of a motion to suppress, this Court defers to the trial court's factual findings, but reviews legal conclusions *de novo*. *Castella v. State*, 959 So. 2d 1285, 1289 (Fla. 4th DCA 2007). In its evaluation, this Court must view the evidence in a light most favorable to sustaining the trial court's ruling. *Nicholas v. State*, 857 So. 2d 980, 981 (Fla. 4th DCA 2003).

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Ultimately, "the totality of the circumstances—the whole picture—must be taken into account." *Finizio v. State,* 800 So. 2d 347, 349 (Fla. 4th DCA 2001) (quoting *Tamer v. State*, 484 So. 2d 583, 584 (Fla. 1986)).

Mere presence *near* an abandoned home is generally not enough to establish reasonable suspicion. In *Jaudon v. State,* 749 So. 2d 548 (Fla. 2d DCA 2000), the defendant parked his vehicle behind an unmarked

2

police car, walked through a hole in a fence, and ran through a nearby abandoned building. *Id.* at 549. The court held that the stop was improper because the officers had nothing more than mere speculation as to criminal activity. *Id.* at 550. Similarly, in *McCloud v. State*, 491 So. 2d 1164 (Fla. 2d DCA 1986), the court held there was nothing unusual suggesting illegal activity when the defendant parked his vehicle next to a boarded-up building with a "No Trespassing" sign. *Id.* at 1167; *see also Palmer v. State*, 112 So. 3d 606, 608 (Fla. 4th DCA 2013) (holding no reasonable suspicion existed based on trespass when there was no evidence that the defendant attempted to enter the building); *Williams v. State*, 910 So. 2d 368, 369 (Fla. 5th DCA 2005) (reversing the trial court's denial of a motion to suppress where defendant was stopped "walking through the [public housing] complex"); *Slydell v. State*, 792 So. 2d 667, 673 (Fla. 4th DCA 2001) (holding officers lacked reasonable suspicion to stop an individual walking in a non-abandoned apartment complex that was not in a location identified as a high crime area).

By contrast, both of the officers in the instant case actually observed Appellant *exiting* the back door of an abandoned home that the officers were aware was part of the "Board and Secure" program. The building was in an area known for criminal activity and was specifically marked with a sign which contained a warning that trespassers would be arrested for violating a city code. Because Appellant was seen exiting the dwelling, there is no doubt that he entered it. He was not merely "near" this abandoned building in a high crime area; *he had been in it.* Thus, it was reasonable for the officers to stop Appellant regarding an investigation of a trespass offense,[2] regardless of whether he ultimately could have been convicted of that offense. *See Ward v. State*, 21 So. 3d 896, 900 (Fla. 5th DCA 2009) ("A police officer is not required to determine conclusively that a crime has occurred prior to detaining an individual.").

## Conclusion

The officers had reasonable suspicion under the totality of the circumstances that Appellant had committed, was committing, or was about to commit a crime, namely that Appellant had trespassed by entering a building in the "Board and Secure" program that had displayed a "No Trespassing" sign. As the investigatory stop was not unlawful, we

---

[2] *See* § 810.08(1), Fla. Stat. (2013) ("Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, . . . commits the offense of trespass in a structure or conveyance.").

affirm the trial court's denial of Appellant's motion to suppress and the adjudication of delinquency for possession of cocaine.

*Affirmed.*

CIKLIN, C.J., and MAY, J., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**