792 So.2d 667 (2001)
Robert SLYDELL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-1846.
District Court of Appeal of Florida, Fourth District.
August 29, 2001.
*669 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Robert Slydell appeals his conviction for resisting an officer without violence, which he contends is fundamentally erroneous because, as a matter of law, he did not commit the crime of resisting the lawful authority of a police officer. We agree and reverse.

FACTS
On January 28, 2000, at about 11:45 p.m., Stuart Police Officer Flemur Zenelovic was on patrol in the 700 block of Tarpon Avenue investigating a suspect for selling narcotics. Zenelovic could not locate the suspect; however, he observed appellant walking in an apartment complex located at 705-733 Tarpon Avenue. The owner of the property had given Stuart police officers authority to issue warnings to suspected trespassers and had posted "No trespassing" signs on the buildings.[1] Because Zenelovic did not recognize appellant as someone he had ever seen in the area, he decided to investigate appellant for trespassing.
Zenelovic radioed Sergeant Thomas Harmer for back-up assistance. Harmer, who was just a few blocks away, pulled over and got out of his patrol vehicle. As Harmer started walking towards Zenelovic, he noticed appellant walking towards him. Appellant turned around and started walking the other way, between the two officers. Like Zenelovic, Harmer did not recognize appellant, although he had worked in the area for eighteen years. Zenelovic approached appellant and asked him his name and whom he was visiting at the location. Appellant responded, "Why the fuck you want my name?" Shortly after Zenelovic began questioning appellant, he noticed that appellant was holding a can of beer with a piece of napkin or paper towel between the can and his hand. Appellant turned and appeared to be trying to conceal his hand behind his leg. When Zenelovic asked appellant what he had in his hand, appellant started to walk away from the officers and headed towards an alley. Just as appellant was "breaking" *670 and about to run, Zenelovic reached out and grabbed appellant. The two officers held appellant and forced him to the ground. During the struggle, appellant dropped the beer can. Appellant placed the napkin in his mouth and then spat it out. Another Stuart police officer, LoGalbo, recovered the napkin from the ground. It contained several pieces of crack cocaine.
Appellant was charged with possession of cocaine, possession of drug paraphernalia, and resisting an officer without violence. A jury found him guilty of all charges. Appellant appeals only his conviction for resisting without violence, which he contends is fundamentally erroneous. He argues that, because neither officer possessed a founded suspicion that he was engaged in any criminal activity, he did not have to identify himself and was free to walk away from the officers. Consequently, when the officers seized him, they were not performing a legal duty, and he did not commit a crime in non-violently resisting them.

PRESERVATION OF SUFFICIENCY OF EVIDENCE ISSUE
The state first argues that appellant failed to preserve this issue for appeal, because he did not raise sufficiency of the evidence on the resisting charge in a motion for judgment of acquittal. As authority, the state cites State v. Barber, 301 So.2d 7, 9 (Fla.1974). In Barber, the supreme court stated:
[U]nless the issue of sufficiency of the evidence to sustain a verdict in a criminal case is first presented to the trial court by way of an appropriate motion, the issue is not reviewable on direct appeal from an adverse judgment. No such appropriate motion having been made in the trial court in this cause, the question of sufficiency of the evidence was not open to appellate review.
The state acknowledges, however, that our court and courts in other districts have reached different conclusions on whether a sufficiency issue can be raised for the first time on direct appeal. See Griffin v. State, 705 So.2d 572 (Fla. 4th DCA 1998); Harris v. State, 647 So.2d 206, 208-209 (Fla. 1st DCA 1994). But cf. Sanders v. State, 765 So.2d 778 (Fla. 1st DCA), rev. granted, No. SC00-1688, 789 So.2d 348 (Fla. Mar.30, 2001) (failure to prove elements of a charged offense does not constitute fundamental error which may be raised for the first time on appeal).
In Griffin, we held that a criminal "conviction is fundamentally erroneous when the facts affirmatively proven by the state simply do not constitute the charged offense as a matter of law." 705 So.2d at 574. There, the defendant was convicted of kidnaping a three-year old child during a store robbery. Although the defendant, in moving for judgment of acquittal, did not specifically set forth the grounds he later argued on appeal, we held that his kidnaping conviction constituted fundamental error, because no kidnaping occurred, as the child was not tied up or confined.
In so ruling, we cited Nelson v. State, 543 So.2d 1308 (Fla. 2d DCA 1989). There, the Second District Court of Appeal found fundamental error in a conviction for resisting an officer without violence. The state's proof at trial established that the defendant ran at the sight of a marked police cruiser. Holding that the defendant's flight, standing alone, did not constitute the crime of resisting a police officer in the lawful execution of a legal duty, the court reversed the conviction. It did so notwithstanding the defendant's failure to state the correct grounds in a motion for judgment of acquittal. The court stated:
Generally, a defendant must articulate the correct grounds in a motion for *671 judgment of acquittal in order for an appellate court to review the issue. This case, however, is not the usual failure of proof case. Instead, this is a situation where Nelson's conduct did not constitute the crime of resisting an officer. Even though this issue was not raised in the trial court, it would be fundamental error not to correct on appeal a situation where Nelson stands convicted of a crime that never occurred.
Id. at 1309 (citations omitted).
Harris also involved a conviction for resisting an officer without violence. There, the First District Court of Appeal determined that the evidence was insufficient to support the crime of resisting an officer without violence and reversed the conviction even though the defendant had failed to move for acquittal on the charge. The court said that "conviction of a crime which did not take place is a fundamental error, which the appellate court should correct even when no timely objection or motion for acquittal was made below." 647 So.2d at 208.

ANALYSIS
To determine whether appellant's conduct in fleeing the officers constituted resisting or obstructing an officer, we must first decide whether the officers were engaged in the lawful execution of a legal duty at the time of his flight. For a conviction for resisting an officer without violence under section 843.02, Florida Statutes, the state must show that: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty. As we explained in H.H. v. State, 775 So.2d 397 (Fla. 4th DCA 2000), an individual may be guilty of unlawfully obstructing an officer if he flees while knowing the officer's intent to detain him and the officer is justified in stopping and detaining him. See also V.L. v. State, 790 So.2d 1140 (Fla. 5th DCA 2001); S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995).
To stop and detain a person for investigation, an officer must have a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. See Popple v. State, 626 So.2d 185, 186 (Fla.1993); § 901.151(2), Fla. Stat. (2000). Whether an officer's suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop. See Travers v. State, 739 So.2d 1262 (Fla. 2d DCA 1999); McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986). Where an investigatory stop is prompted by an officer's lack of knowledge as to whether a person is engaged in any criminal activity, such a detention is supported by no more than a hunch. See Turner v. State, 552 So.2d 1181, 1182 (Fla. 4th DCA 1989). A mere "hunch" that criminal activity may be occurring is not sufficient. See McCloud, 491 So.2d at 1167.
In this case, the criminal activity that the police were investigating was trespassing. Section 810.09(1), Florida Statutes, states that the crime of trespass occurs "when an individual, without being authorized, willfully enters upon or remains on property as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, etc." See also Burgess v. State, 630 So.2d 666 (Fla. 4th DCA 1994). When the officers approached appellant, they had only a "hunch" that he was trespassing because they did not recognize him. They possessed no articulable facts to reasonably suspect that appellant had unlawfully entered or remained on the premises.
*672 The officers testified that they frequently patrolled the area, but they did not claim to know all of the residents by sight. Moreover, they acknowledged that "it's a highly transient area." The record does not contain a description of the physical layout of the apartment complex or an estimate of the number of residents housed there. Further, no evidence was presented about any common physical characteristics or traits of the complex's residents and visitorssuch as race, ethnicity, or agethat would shed any light on whether there was anything "incongruous or unusual" about appellant's presence in the neighborhood. See State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). In fact, Officer Zenelovic candidly acknowledged that when he decided to stop and investigate appellant, all he knew was that he did not recognize him.
The state suggests that the officers' "hunch" that appellant was unlawfully on the premises, combined with the property owner's request that the police investigate suspected trespassers, sufficed as legal grounds to stop and detain appellant. As support for this position, the state cites several cases upholding investigatory stops where property owners had given police authorization to issue trespass warnings and/or had posted "no trespassing" signs on their property. In most of those cases, however, the courts found additional facts which supported a reasonable suspicion of trespassing.[2]
We do not agree that an officer's bare suspicion that a person is trespassing, even when coupled with an agreement between the property owner and the police for officers to stop and investigate persons whom the officers do not recognize as residents, is sufficient for an investigatory stop and detention. A property owner's grant of authority to police officers to investigate trespassing on the owner's premises does not confer any greater authority upon law enforcement during police-citizen contact than do our Constitution and laws. Officers still need a reasonable and articulable suspicion that a person is engaged in criminal activity for a Terry[3] stop.
As stated above, the officers in this case did not have a well-founded suspicion that appellant was committing a trespass to justify stopping and detaining him. However, based on the record before us, we conclude that the officers did not need a reasonable suspicion for their initial contact with appellant. When the officers first approached appellant and tried to ascertain his identity, their contact with appellant was not an investigative stop. It *673 was a consensual encounter. For a consensual encounter, the officers did not need a founded suspicion of criminal activity. They were authorized to approach appellant and ask him a few questions to dispel concerns about his presence in the area. See Popple v. State, 626 So.2d at 187 (citing Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) and Lightbourne v. State, 438 So.2d 380 (Fla. 1983))(a police officer does not need to have a founded suspicion to approach an individual and ask a few questions).
On the other hand, because the initial interaction between the officers and appellant was a consensual encounter, appellant was free to ignore the officers and walk away from them. See Popple, 626 So.2d at 186 (during a consensual encounter, a citizen may either voluntarily comply with a police officer's requests or choose to ignore them). Appellant did, in fact, exercise his right to ignore Officer Zenelovic's questions about his identity. He also started to walk away, and then ran as the officers began questioning him about the beer can he was holding.
Without question, when the officers gave chase and subdued appellant, the encounter ceased being consensual and progressed to a stop or "seizure." Terry, 392 U.S. at 16, 88 S.Ct. 1868 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person."). For such conduct to be lawful, the officers must have a reasonable suspicion, and such suspicion must be supported by articulable facts. Id. at 29, 88 S.Ct. 1868.
Recently, the United States Supreme Court held that unprovoked flight from the police in a high crime neighborhood can provide sufficient reasonable suspicion to warrant a Terry stop. See Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In Wardlow, the defendant fled immediately upon seeing a caravan of police vehicles arrive in an area known for heavy narcotics trafficking. The police officers had observed the defendant holding an opaque bag. After chasing the defendant, the officers stopped him and searched him for weapons. They arrested the defendant after discovering a handgun in the bag. The Supreme Court held that the defendant's unprovoked flight upon noticing the police in an area known for heavy narcotics trafficking provided reasonable suspicion that the defendant was involved in criminal activity.
The facts in this case are distinguishable from those in Wardlow. Here, there was not the same sort of sudden, unprovoked, and headlong flight in a high crime area as there was in Wardlow. Appellant was not in a location identified by the officers as a high crime area. Moreover, appellant did not flee right away upon discovering the police officers' presence in the vicinity. In contrast to the defendant in Wardlow, appellant stopped when approached by the officers and engaged in a brief verbal exchange with them. During this exchange, appellant pointedly questioned Officer Zenelovic's motives in asking about his identity and communicated his unwillingness to cooperate with them. Wardlow acknowledged that Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), gives an individual the right to ignore the police and go about his business and that "[a]ny `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" Wardlow, 528 U.S. at 125, 120 S.Ct. 673 (citing Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389). Hence, we do not think that the circumstances in this case constitute the kind of "unprovoked flight" contemplated in Wardlow. But see Frazier v. State, 789 *674 So.2d 486 (Fla. 2d DCA 2001)(where defendant fled as soon as police officers approached an area they were patrolling in response to complaints of loiterers and trespassers, the officers had reasonable suspicion under Illinois v. Wardlow to justify an investigatory stop of the defendant).
As previously stated, what began as a consensual encounter evolved into a stop and seizure when the officers chased and forcibly subdued appellant. Yet, the officers did not observe any additional particularized and objective facts or circumstances that gave them a basis for stopping and further detaining appellant. The fact that the officers observed appellant try to move his beer can and napkin away from their view added little to the "totality of circumstances," because there was no testimony that the officers suspected appellant of any illegal alcohol or drug activity.[4] The location of the stop was not described as an area of high drug trafficking and there was no testimony that, in the officers' experience, a beer can and napkin are commonly used to transport or consume narcotics. The officers testified that their sole purpose for stopping defendant was to see if he was committing a trespass. They did not cite any facts or circumstances supporting a reasonable suspicion that appellant was committing a second crime, possession of drugs. For this reason, we have difficulty discerning what legitimate law enforcement purposes could have been served by appellant's continued detention. The officers had no probable cause for a search of appellant, and not even a reasonable suspicion of a weapon for a pat-down. See Royer, 460 U.S. at 499, 103 S.Ct. 1319 (discussing the principle that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop").

CONCLUSION
In sum, appellant's decision to terminate the consensual encounter with the officers and "go about his business" rather than "stay put and remain silent in the face of police questioning,"[5] without more, did not provide the "minimal level of objective justification" needed for detaining him. Because the officers lacked objective reasons for believing that appellant was engaged in criminal activity, they lacked authority to stop and detain appellant. Thus, when appellant ran away from the officers, he was not unlawfully opposing or obstructing them in the lawful execution of a legal duty. See H.H. v. State, 775 So.2d at 397.
As in Nelson and Harris, the defendant's conduct in this case did not constitute the crime of resisting an officer. We, therefore, reverse appellant's misdemeanor conviction of resisting an officer and remand with instructions to discharge appellant as to this count.
REVERSED and REMANDED.
KLEIN, J., concurs.
FARMER, J., concurs specially with opinion.
*675 FARMER, J., concurring.
The issue in this appeal is whether a citizen's headlong flight from a police officer who lacks a founded suspicion of wrongdoing and who has not told the citizen that he is being detained is enough by itself to sustain a conviction for obstructing a police officer without violence.[6] Defendant argues that the state failed to prove a prima facie case of obstructing by fleeing and that under these facts his conviction is fundamental error. Because the cases in this state hold that flight alone is inadequate to prove obstructing a law enforcement officer, I concur in the reversal of the conviction in this case.
Judge Taylor has carefully described the circumstances leading up to the point of the flight. Our holding is that until the moment when flight began the circumstances did not give rise to a founded suspicion authorizing a Terry investigative stop. I fully agree with this holding. I also agree with the majority's additional holding that the decision in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), authorizing a Terry stop where flight alone is present,[7] is inconsequential for this case, where the issue is whether defendant is guilty of obstructing an officer by flight, not whether the flight itself gave the police a basis to stop defendant.
I agree that under Wardlow defendant's flight might have been relevant to the validity of the patdown search which resulted in the discovery of cocaine and thus supported a conviction for possession. And it is true that this defendant was in fact also convicted for possession of cocaine found as a result of a search when he was seized after his flight. That conviction is not the subject of this appeal, however. The only issue raised here is whether the state proved the crime of obstructing an officer without violence by his flight.
If the act of fleeing itself obstructed the officer in the performance of his duty, then Wardlow's holding has no application to the obstruction charge, because Wardlow's holding deals with the consequences of acts and occurrences after the flight ended and the police had seized him. Hence, while under Wardlow headlong flight affords a basis for a limited Terry stop and a patdown for weapons, I agree that it affords no basis to sustain this conviction for obstructing an officer by such flight. The answer to the question whether the state proved a prima facie case of obstructing an officer without violence will be found in the cases interpreting our state statute, not in Wardlow.
We ourselves have held that "suspicious or furtive movements are not reasonable grounds to justify a stop and detention, even when combined with flight in a high crime area." Breedlove v. State, 605 So.2d 589, 590 (Fla. 4th DCA 1992). In Breedlove the facts showed that the officer spied defendant across a vacant field, who then *676 made a furtive gesture and fled from the officer. We held that "[s]ince the officer had no grounds to stop appellant, appellant cannot be resisting the officer by running away." 605 So.2d at 590. Thus our own precedent presents a clear holding directly against the state's theory of prosecution in this case. More recently we noted in dicta that "[f]light, standing alone, does not constitute obstructing an officer nor does it give rise to a well-founded suspicion of criminal activity." Mosley v. State, 739 So.2d 672, 675 (Fla. 4th DCA 1999). And even more recently still, we said that "[a]n individual may be guilty of unlawfully obstructing an officer if he flees while knowing the officer's intent to detain him and the officer is justified in making a stop pursuant to the Stop and Frisk statute." H.H. v. State, 775 So.2d 397, 398 (Fla. 4th DCA 2000).
Our holdings have not been unique. Other courts of appeal in this state have been quite explicit in holding that flight from an officer without more is insufficient to sustain a conviction for obstructing. See D.M. v. State, 681 So.2d 797 (Fla. 2d DCA 1996) (flight alone does not give rise to well-founded suspicion on part of police officer that defendant was engaged in criminal activity, so as to justify detention; nor does it constitute obstructing officer); J.A. v. State, 679 So.2d 843 (Fla. 2d DCA 1996) ("Even though J.A. ran from the officers, flight alone does not constitute obstructing, nor does flight itself give rise to a well-founded suspicion of criminal activity."); S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995) (flight alone, such as flight of passenger of vehicle that goes into ditch, does not constitute obstructing an officer and does not give rise to well-founded suspicion of criminal activity under statutory prohibition against resisting officer); F.B. v. State, 605 So.2d 578 (Fla. 3d DCA 1992) (juvenile's flight when ordered by officers to stop was not sufficient to support finding of guilt as to resisting arrest without violence, where officers had no basis for detaining juvenile at time they ordered him to stop); Perry v. State, 593 So.2d 1165, 1166 (Fla. 1st DCA 1992) ("Several cases have held that flight, standing alone, will not support a charge of obstructing a police officer in the lawful execution of a legal duty."); Nelson v. State, 543 So.2d 1308 (Fla. 2d DCA 1989) ("Flight, standing alone, will not justify a stop of an individual by a police officer, nor will it support a charge of obstructing a police officer in the lawful execution of a legal duty." [c.o.]). The consensus of appellate opinion in Florida is that a conviction for obstructing an officer by flight under our statute requires a founded suspicion to stop and detain, something we all agree is lacking in this case.
Another problem with the evidence in this case is the lack of any indication by the officers that defendant was required to remain where he was and that in leaving he would be guilty of obstructing an officer in the performance of his duties. Knowledge that one is not free to leave the officer is critical to a conviction for obstructing by flight. As the first district said:
"An individual may be guilty of unlawfully obstructing an officer if he flees while knowing of the officer's intent to detain him and the officer is justified in making a stop pursuant to the Stop and Frisk Statute." [e.s.]
F.E.C. v. State, 559 So.2d 413, 414 (Fla. 2d DCA 1990); see also D.M., 681 So.2d at 798 (state must show defendant fled "with knowledge of the officer's intent to detain him"); S.G.K., 657 So.2d at 1248 ("[T]he State failed to show appellant had any reason to believe he was being detained.... [T]he trooper admitted he never ordered [him] to stop."); Harris v. State, 647 So.2d 206 (Fla. 1st DCA 1994) *677 (officer answered "no" to question whether he had ever told defendant to stop).
The failure of the officers in some way to convey the idea to defendant that he was being detained means that he had no way of knowing that he was not free to flee. Of course, our holding today is that he was. If he was free to flee, then his flight was all right.
I agree that the conviction must be reversed.
NOTES
[1] There was no fence surrounding the apartment complex and a public street bordered the complex's parking area.
[2] See State v. Dilyerd, 467 So.2d 301 (Fla.1985)(police officers, who had been requested by property owners to remove trespassers, were justified in stopping two men in a parked car on the property, which was an orange grove being developed into residential real estate and which had recently been a site for teenage drinking parties); Flowers v. State, 755 So.2d 708 (Fla. 4th DCA 1999)(fact that the suspect was in a commercial property parking lot after business hours, coupled with "no trespassing" signs and the premises owner's participation in the city's "trespassing program," authorized the officers to approach and inquire about his reasons for being in the parking lot); Robinson v. State, 551 So.2d 1240, 1241 (Fla. 1st DCA 1989)(officer's observation of the defendant fleeing with a group of men upon his approach and burying a cocaine pipe in the ground gave the arresting officer a founded suspicion of trespass, which justified stopping defendant to ascertain his identity and the circumstances surrounding his presence at the apartment complex); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989)(police could properly stop the defendant, who was hanging out at 1:00 a.m. in the apartment building's laundry room [plagued by illegal drug sales] and fled at the sight of the police).
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] It is immaterial to our Fourth Amendment analysis that the napkin turned out to contain cocaine. Only the facts known to the officers at the time of the stop are relevant to a determination of reasonable suspicion. See Ward v. State, 453 So.2d 517 (Fla. 2d DCA 1984)(citing Vollmer v. State, 337 So.2d 1024 (Fla. 2d DCA 1976), petition for review dismissed, 347 So.2d 432 (Fla.1977), for the principle that nothing that transpires after the initial stop can be used to validate the unlawful stop).
[5] Wardlow, 528 U.S. at 126, 120 S.Ct. 673.
[6] See § 843.02, Fla. Stat. (2000) ("Whoever shall resist, obstruct, or oppose any officer ... in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree....").
[7] Case by caseor (should I say?) nail by nailthe courts are closing the lid on the coffin of the idea that in this age of the war on drugs there is any such thing as a truly consensual encounter between officer and citizen when drugs are suspected (or, for that matter, merely imagined). In fact Wardlow may have already entombed it. If two people seeing each other across a crowded street is really a "consensual encounter," then the speed with which one of them disappears from the other's view should not matter. Nevertheless the Supreme Court has held otherwise and we must follow itif only for search and seizurebut not for the meaning of the Florida obstructing statute.