910 So.2d 368 (2005)
Simeon WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1497.
District Court of Appeal of Florida, Fifth District.
September 16, 2005.
*369 James S. Purdy, Public Defender, and Rose M. Levering, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Simeon Williams ["Williams"] appeals the denial of his motion to suppress. He was charged with possession of cocaine and resisting arrest without violence. He filed a motion to suppress a cigar tube and cocaine found in his pocket, arguing among other things that the evidence was obtained as the result of an illegal investigatory detention. We agree and reverse.
At the suppression hearing, Officer Anthony Marchica of the Cocoa Police Department testified to the circumstances surrounding Williams' arrest. On December 12, 2004, he was patrolling housing located at 1080 North Fisk, which he called a "high crime" area. He said the management of the complex had issued a "blanket trespass order," which he characterized as giving the police department permission to remove any non-residents and enforce certain rules against residents, including rules which prohibit obstructing certain areas and drinking outside the premises.
At approximately 2:30 a.m., Officer Marchica made contact with Williams, who was walking through the complex. The reason for Officer Marchica's approach was to determine whether Williams was a resident. Other than the late hour, nothing stood out suggesting that he did not belong there. Williams was wearing a hooded sweatshirt with big pockets in the front, and he immediately placed both hands in the front pocket. Williams was defensive, asking why the officer had stopped him and was bothering him. He said that he had been visiting a friend or a cousin at one of the *370 buildings. The officer decided to do an I.D. check to confirm that Williams knew a resident and to see if he had any outstanding warrants. He asked Williams to take his hands out of his front pocket because the two men were in such close proximity. The officer did not see any bulges in Williams' pocket, but thought that he "maybe [was] hiding something. I don't know." He explained that a lot of the people they encounter carry a small pocketknife and he was concerned about his safety. Williams took his hands out of his front pocket, but almost immediately put them right back in, which caused Officer Marchica to ask Williams if he could search him for weapons. Williams refused and walking away backwards, said, "You ain't going to search me." He then began to run. Officer Marchica pursued Williams and brought him down with his Taser gun. He explained that he did this to detain him because: "[W]e are obligated to issue a trespass warrant [sic] until we can further investigate that he does actually belong there or knew a resident. . . ." He explained that if Williams had not fled, he would have confirmed whether he lived there or knew a resident and, if he did not belong in the complex, he would then have issued a trespass warning.
Williams was arrested for resisting arrest without violence. During a search incident to arrest, officers found a small, red, cut-down cigar stub, which is commonly used to store crack cocaine. Inside, a white substance that field-tested positive for crack cocaine was found.
Defense counsel argued that Williams' detention and arrest were illegal, as police officers had no founded suspicion of criminal activity sufficient to warrant his detention, no grounds for asking him to remove his hands from his pocket and no basis to subdue him. Counsel cited Slydell v. State, 792 So.2d 667 (Fla. 4th DCA 2001) and Ray v. State, 849 So.2d 1222 (Fla. 4th DCA 2003) in support of his motion.
The court reserved ruling at the conclusion of the hearing, but on March 30, 2004 issued an amended order denying Williams' motion to suppress.[1] The court found that Officer Marchica had made a valid investigatory stop of Williams to investigate him for trespassing and that the officer had the right to conduct a pat-down of Williams for his safety because the defendant kept putting his hands in his pocket. The court distinguished Slydell on the basis that it did not involve a stop in a "high crime" area.
The trial court erroneously concluded that the initial encounter between Officer Marchica and Williams was a valid investigatory stop. There was no reasonable suspicion on the part of Officer Marchica that Williams was committing the crime of trespass. See Popple v. State, 626 So.2d 185 (Fla.1993); see also § 901.151, Fla. Stat. (2003). A founded suspicion is:
one based upon facts and circumstances observed by the officer and interpreted in light of his knowledge and experience. The officer must be able to articulate a basis for his suspicion that a person has committed, is committing, or is about to commit a crime. Bryant v. State, 577 So.2d 1372, 1374 (Fla. 1st DCA 1991). Such a suspicion cannot be based upon a mere hunch or guess. Tamer v. State, 484 So.2d 583 (Fla.1986).
State v. Hopkins, 661 So.2d 937, 938 (Fla. 5th DCA 1995); accord Brown v. State, 687 So.2d 13 (Fla. 5th DCA 1996).
*371 Section 810.09, Florida Statutes, provides that a person trespasses in violation of that statute by willfully entering or remaining in any property other than a structure or conveyance as to which notice against entering or remaining has been given. § 810.09(1), Fla. Stat. (2003). Cases that have found a reasonable suspicion of trespass usually involve more than mere presence on property.[2]
Officer Marchica failed to articulate any facts to support a founded suspicion that Williams was engaged in any crime. It was not even apparent from the officer's testimony whether "no trespassing" signs were posted in the complex. In fact, his testimony suggested that a crime could have been committed only if Williams refused to leave after receiving Marchica's warning. See In Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989) (police authority in case in which no warning is posted is limited to conveying an order to depart the premises).
The Fourth District Court of Appeal has found an investigatory stop to be improper under circumstances virtually identical to those in this case. See Slydell, 792 So.2d at 667. In Slydell, a police officer on patrol investigating a report of a suspect selling narcotics observed the defendant walking through an apartment complex. The owner of the property had given Stuart police officers authority to issue warnings to suspected trespassers and had posted "No trespassing" signs on the buildings. The officer did not recognize the defendant as someone he had ever seen in the area, and so decided to investigate him for trespassing. The officer radioed for backup assistance, and the two officers approached the defendant, who started walking the other way. Like the first officer, the second officer did not recognize the defendant, although he had worked in the area for eighteen years. In holding that these facts did not permit an investigatory stop based on a reasonable suspicion that defendant was trespassing, the court emphasized that the officers had only a "hunch" that the defendant was trespassing because they did not recognize him. See also Blue v. State, 837 So.2d 541 (Fla. 4th DCA 2003).
The Slydell court also explained why Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), did not control based on the facts. In Wardlow, the United States Supreme Court held *372 that "unprovoked flight" from police in a high crime neighborhood can provide sufficient reasonable suspicion to warrant a Terry stop. The defendant in Wardlow fled immediately upon seeing a caravan of police vehicles arrive in an area known for heavy narcotics trafficking. In Slydell, as in this case, the defendant did not flee upon seeing the officer. Both individuals stopped and engaged in a brief exchange with the officer and both expressed their unwillingness to cooperate before running away. Slydell at 673.
We agree with Slydell and reverse the order denying suppression of the fruits of the search.
REVERSED and REMANDED.
PETERSON and MONACO, JJ., concur.
NOTES
[1] The heading of the original order stated that it was an order granting Williams' motion to suppress, but the body of the order indicated that the court was denying the motion. The amended order was apparently issued to resolve the discrepancy.
[2] See, e.g., Flowers v. State, 755 So.2d 708 (Fla. 4th DCA 1999) (police, who were acting pursuant to city's "trespass program" whereby the owners of the businesses allow the police to conduct premises checks and enforce trespassing laws based upon affidavits which are signed by the owners and kept on file with the police, had founded suspicion to stop suspect who they observed in the parking lot after the business was closed, where "No trespassing" signs were posted, and suspect ran upon being approached by the police); State v. M.A.D., 721 So.2d 412 (Fla. 3d DCA 1998)(where police officer recognized juvenile as someone whom police and store's management had warned on previous occasions not to congregate in front of store, police had founded suspicion sufficient to justify investigatory stop of juvenile hanging around in front of store); Robinson v. State, 551 So.2d 1240 (Fla. 1st DCA 1989) (where arresting officer routinely patrolled an apartment complex in area known for drug dealing and use and apartment management requested police to spot check for persons on property without pass and prosecute those without pass for trespass, police officer had founded suspicion of trespass sufficient to support investigatory stop of black males gathered outside of apartment building, late at night, in area known for drug dealing and use, when males began to run on officer's approach); State v. Pye, 551 So.2d 1237 (Fla. 1st DCA 1989) (where apartment complex was posted against trespassing, police could properly stop defendant, who was hanging out at 1:00 a.m. in the apartment building's laundry room with four or five other persons, when laundry area had been plagued by illegal drug sales and defendant immediately fled at sight of police).