962 So.2d 960 (2007)
J.M.C., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3298.
District Court of Appeal of Florida, Fourth District.
July 25, 2007.
Rehearing Denied September 17, 2007.
*961 Carey Haughwout, Public Defender, and Elisabeth Porter, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
J.M.C. was convicted of resisting an officer without violence as a result of his behavior while the officer was giving him a trespass warning. He raises a single issue: whether one element of the crime, that the officer be engaged in the lawful execution of a legal duty, is satisfied when the officer is giving a trespass warning. We affirm the conviction; however, there is no majority agreement on the basis on which to affirm. Hence, there are two specially concurring opinions and a dissent.
KLEIN, J. and REYES, ISRAEL U., Associate Judge, concur specially with opinions.
SHAHOOD, C.J., dissents with opinion.
KLEIN, J., concurring specially.
The incident began when the director of a public park called the police because of an altercation between adult soccer players she did not know and juvenile basketball players she did know. She testified that after officers came and sent the adults away, she called the police again to inform them that she had not wanted the people using the park to have to leave, but only wanted the altercation ended. She also said that another officer then came to the park, and she asked him to try to find out what the problem had been. The next thing she observed was the arrest of appellant.
In contrast to her testimony, the officer who arrested appellant testified that she had told him to ask the boys to leave the park. He testified that as he walked toward the park, he saw appellant getting on his bike, and he called appellant over. The officer explained that he intended to "trespass him from the property" and that he gave appellant a verbal trespass warning based on the authorization of the park director. At this point, according to the officer, appellant became aggressive and stated: "that I wasn't shit, that he kicked my ass. He told me, `F___ you,' and just basically just obstructing my investigation." At one point appellant clenched his fists and looked the officer in the eye, putting the officer in fear of confrontation. Appellant admitted the officer asked him to leave the park, and that he refused to give the officer his name or sign a trespass warning.
The officer then arrested appellant, and he was charged with disorderly conduct and resisting an officer without violence. The trial court found appellant not guilty of the former, but guilty of the latter, and appellant contends that his motion for judgment of acquittal should have been granted.
In order to prove the crime of resisting an officer without violence, it must be shown that the officer was engaged in the lawful execution of a legal duty and that the action by the defendant constituted obstruction or resistance of the lawful duty. § 843.02, Fla. Stat. (2005); Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001). The only argument appellant raises is that the state failed to prove that the officer was engaged in the lawful execution of a legal duty when the officer called him over to give a trespass warning.
Because the evidence is reviewed in a light most favorable to the state, E.A.B. v. State, 851 So.2d 308 (Fla. 2d DCA 2003), the conflict between the testimony of the park director, who said that she did not *962 want the boys to be asked to leave, and the testimony of the officer, who testified that she instructed him to ask them to leave, is resolved in favor of the officer.
Appellant relies on Slydell, but Slydell is distinguishable in that the officers in Slydell had no reasonable suspicion to stop the defendant and had not been asked to give a trespass warning or to remove the defendant. Slydell accordingly was free to walk away.
In L.K.B. v. State, 697 So.2d 191 (Fla. 5th DCA 1997), an officer was attempting to obtain identification from a juvenile in order to complete a trespass warning, and the issue raised was whether the officer was performing a legal duty. The majority affirmed the conviction for resisting an officer without violence based on reasoning that the officer had a reasonable suspicion that the juvenile was about to commit or had already committed an assault against a customer of a store. Judge Griffin, however, dissented, explaining:
The plain truth is that this defendant was arrested because he ran off when the officer approached him to give him a trespass warning. The problem is that a police officer cannot detain a person and force him to identify himself for the purpose of giving a trespass warning. Section 810.09, Florida Statutes provides that a person trespasses in violation of that statute by willfully entering or remaining in any property other than a structure or conveyance as to which notice against entering or remaining has been given. 810.09(1), Fla. Stat. (1995). This property owner had a right to ask the defendant to leave his property, and the defendant had the right, as well as the duty, to do so. The fact that the property owner elected to have the police do the asking did not affect this defendant's right to leave without interference. It also does not confer any special rights upon the officer who is merely acting on behalf of the property owner. The officer's agreement to convey the trespass warning does not convert this into a "legal duty."
The correct analysis of a case such as this is found in In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989).
L.K.B., 697 So.2d at 195 (Griffin, J., dissenting). I agree with Judge Griffin that there was no reasonable suspicion to conduct an investigatory stop in L.K.B. or in this case, but I do not believe that is determinative of whether the officer was in the performance of a legal duty.
B.M., cited by Judge Griffin, involved suppression, not resisting without violence, and this court held that the officers had no founded suspicion to stop the juvenile, who was standing with a group of people in the parking lot of a closed grocery store. The trial court denied the motion to suppress on the ground that the juvenile had remained on the property after being asked to leave. There was no evidence, however, that the juvenile had been warned against trespassing or had remained on the property after being ordered to leave. This court explained: "Even if we assume that the police officers had authority from the owner to remove trespassers, their authority in this case where no warning against trespassing was posted was limited to conveying an order to depart the premises." Id. at 715. This court further stated in footnote 2:
A stop to inform trespassers of an order to leave required under section 810.09(2)(b), Florida Statutes, is more akin to a `mere encounter' than a `stop' for constitutional analysis. This is not a stop based on founded suspicion, because the crime of trespass on unposted land does not occur until after trespasser is warned to depart and fails to do so.
B.M. is not controlling here because the precise issue involved in this case, whether *963 an officer giving a trespass warning is performing a legal duty, was not at issue in B.M.
The trespass statute requires, as an element, notice against entering or remaining on the premises by "actual communication" or other means. It is certainly not unusual for the police to be asked to communicate the notice or warning. Judge Shahood, in his dissent, concludes that when the officer called appellant over to give him a warning, this became a seizure which violated the Fourth Amendment because there was no reasonable suspicion that a crime had been committed. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although I agree that there was no reasonable suspicion that a crime had been committed, that is not the end of the analysis. As the court explained in Rivers v. Dillards Department Store, Inc., 698 So.2d 1328, 1332 (Fla. 1st DCA 1997), a civil case:
[The trespass of a structure statute] does not provide an absolute basis for the detention, since the warning had not yet been issued, although we agree that, implicitly, some detention may be necessary in order to issue the warning alluded to in that section. The detention still must be reasonable under the circumstances.
When an officer pulls a driver over for a traffic infraction, which is not a crime, there is no reasonable suspicion of a crime, but it is permissible under the Fourth Amendment. As the Supreme Court explained in Delaware v. Prouse, 440 U.S. 648, 653-55, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (footnotes omitted),
The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile [for a traffic infraction] and detaining its occupants constitute a "seizure" within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order "`to safeguard the privacy and security of individuals against arbitrary invasions. . . .'" Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against "an objective standard," whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon "some quantum of individualized suspicion," other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not "subject to the discretion of the official in the field," [citations omitted] [emphasis added].
In my opinion the officer who was called to give the trespass warning in this case was acting in a situation and in a manner contemplated by Prouse. A nd he was in the performance of a legal duty contemplated by our trespassing statute when appellant resisted. It is on that basis that I agree to affirm.
REYES, ISRAEL U., Associate Judge, concurring specially.
I, too, would affirm the trial court, but for different reasons. I believe that based on the reliable information provided by citizen-informant King that several juveniles *964 were causing a disturbance, Deputy Maldonado had reasonable suspicion to detain the appellant. Once the deputy ordered the appellant to return to his location and the appellant complied, this encounter became a valid investigatory stop that then ripened into probable cause to believe that the appellant committed the crime of Resisting an Officer without Violence. § 843.02, Fla. Stat. (2005); see also California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (seizure occurs when the suspect submits to the officer's show of authority); Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002) (An order or command from a law enforcement officer during a consensual encounter transforms it into a Terry stop.).
"[T]here are three levels of encounters between the police and citizenry." Saturnino-Boudet v. State, 682 So.2d 188, 191 (Fla. 3d DCA 1996). "`The first level is considered a consensual encounter and involves only minimal police contact.'" Falls v. State, 953 So.2d 627, 629 (Fla. 4th DCA 2007) (quoting Popple v. State, 626 So.2d 185, 186 (Fla.1993)).
"The second level of police citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity."[[1]]
Id. at 629-30 (quoting Popple, 626 So.2d at 186); see, e.g., Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry, 392 U.S. at 30, 88 S.Ct. 1868; Thomas v. State, 250 So.2d 15, 17 (Fla. 1st DCA 1971); see also State v. Davis, 849 So.2d 398, 400 (Fla. 4th DCA 2003). Reasonable suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence, see United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), and can be provided by a citizen informant. See State v. Manuel, 796 So.2d 602, 605 (Fla. 4th DCA 2001) ("A tip by a citizen-informant, as opposed to an anonymous tipster, is entitled to a presumption of reliability and does not require further corroboration to provide the requisite reasonable suspicion for a stop."). Tips from identifiable citizens who observe criminal conduct and report it, along with their identities to the police, will almost invariably be found sufficient to justify police action. J.L. v. State, 727 So.2d 204, 206 (Fla.1998); State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997) (quoting Wayne R. LaFave, Search and Seizure § 3.3 (3d ed.1996)); State v. Talbott, 425 So.2d 600, 602 n. 1 (Fla. 4th DCA 1982) (quoting Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981)); e.g., Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); State v. Simons, 549 So.2d 785, 786 (Fla. 2d DCA 1989); see also 901.15, Fla. Stat. (1995).
However, if the Terry investigatory stop is not lawful, anything occurring after the *965 stop is fruit of the poisonous tree. Pantin v. State, 872 So.2d 1000, 1002 (Fla. 4th DCA 2004) (When an investigatory stop is not based on reasonable suspicion, it violates the Fourth Amendment and is unlawful, making evidence obtained as a result of the stop inadmissible as fruit of the poisonous tree.).
The stop here was based on reasonable suspicion. Deputy Maldonado was called to the community center because several juveniles were causing a disturbance. The appellant was one of the individuals involved. King told the deputy that she wanted a trespass warning issued to them. King, who works at the community center, was an average citizen who found herself in the position of a witness to a potential trespass and thereafter relayed to Deputy Maldonado what she knew. Thus, because King was a citizen informant, Deputy Maldonado did not need to verify or corroborate the tip that the appellant was trespassing before initiating the Terry stop. King's tip was entitled to a presumption of reliability and standing alone was sufficient and gave Deputy Maldonado the reasonable suspicion he needed to detain the appellant.
After speaking with King, Deputy Maldonado went to speak to the group of juveniles at the basketball courts, including the appellant. Deputy Maldonado was in full uniform with a gun. By the time Deputy Maldonado went to the aforementioned group, the appellant had gotten on his bike and started to peddle away. Deputy Maldonado ordered him to return and the appellant came back to him. Thus, because Deputy Maldonado was acting on the citizen informant tip, had ordered the appellant to come to him, was in full uniform with a gun, and the appellant obeyed Deputy Maldonado, the deputy initiated a valid Terry stop. Because the stop was valid, everything that occurred after the subject investigatory stop is not fruit of the poisonous tree.
This valid Terry detention then ripened into the requisite probable cause needed to arrest the appellant for Resisting an Officer without Violence. See United States v. Sharpe, 470 U.S. 675, 705-06, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (A Terry detention can ripen into probable cause for an arrest.). The crime of Resisting an Officer without Violence has two elements:
Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree. . . .
843.02, Fla. Stat. (2005); see Mosley v. State, 739 So.2d 672, 675 (Fla. 4th DCA 1999). First, the officer must be engaged in the lawful execution of a legal duty. Id. Second, the defendant's action, be it by words, conduct or a combination thereof, must constitute obstruction or resistance of that lawful duty. Id. Performing a valid Terry stop is a legal duty. L.K.B. v. State, 697 So.2d 191, 193 (Fla. 5th DCA 1997). The word "obstruct" in the statute prohibiting obstruction of an officer without violence means to interfere with, impede or retard; while "oppose" in the same statute means to be in contention or conflict with, to combat, to resist. Wilkerson v. State, 556 So.2d 453, 455 (Fla. 1st DCA 1990).
Having concluded that Deputy Maldonado executed a valid Terry stop when he encountered the appellant, it is clear that he was engaged in a lawful duty. During this Terry stop, the appellant obstructed or resisted that lawful duty, thus, violating the resisting statute. Deputy Maldonado testified that during the stop, the appellant directed obscenities laced with threats. At one point, the appellant clenched his fists and looked Deputy Maldonado dead in the eye, making Deputy Maldonado believe *966 there was going to be a confrontation. Clearly, by his words, conduct, or a combination thereof, the appellant obstructed or resisted Deputy Maldonado's lawful duty.
It is of no consequence that Deputy Maldonado validly stopped the appellant to investigate a trespassing or disturbance, but later arrested him for Resisting an Officer without Violence. Nothing in Terry or its progeny requires that an officer must charge a subsequently arrested Terry detainee with the same crime the officer reasonably suspected the detainee was committing at the time of the stop. It is also of no import that Deputy Maldonado did not ascertain if the appellant had been notified that he could not remain on that property prior to the investigatory stop. § 810.09, Fla. Stat. (2006). Deputy Maldonado did not have to obtain any corroboration or evidence prior to confronting the appellant because the tip was from a citizen informant and Terry stops are initiated for investigative purposes. As previously stated, the purpose of a police investigation is to resolve any ambiguity. Therefore, I concur that the trial court did not err in finding the appellant guilty of this charge and did not err in denying the motion for judgment of dismissal.
SHAHOOD, C.J., dissenting.
As stated by Judge Klein, I agree that in order to convict a person for resisting an officer without violence, it must first be shown that "the officer was engaged in the lawful execution of a legal duty; and . . . the action by the defendant constituted obstruction or resistance of the lawful duty." Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001); § 843.02, Fla. Stat. (2005).
The initial encounter that occurred between the officer and appellant constituted a consensual encounter. The officer did not have the requisite well-founded, articulable suspicion of criminal activity to satisfy an investigatory stop. See Popple v. State, 626 So.2d 185, 186 (Fla.1993). Appellant's actions did not meet the statutory requirements for a trespass, nor was he committing or about to commit a trespass.
There are four elements that constitute a trespass pursuant to section 810.09, Florida Statutes (2005). The elements are (1) that the property was owned by or lawfully in possession of someone other than the defendant; (2) that the defendant willfully entered the property; (3) that the defendant was on the property without authorization, license, or invitation; and (4) that notice not to enter had been given to the defendant by actual communication. State v. McCormack, 517 So.2d 73, 74 (Fla. 3d DCA 1987).
The record reflects that the park director had heard a confrontation taking place in the park where a group of kids were using foul language and getting aggressive with some adult soccer players. An officer came to the park and sent the adults away. The director called the police again and explained that she "didn't want anybody to have to leave," just "didn't want anybody to get hurt." A second officer arrived and the director pointed out the boys who caused the disturbance and specifically appellant. The director knew appellant because he "was in our youth group [at the center], and he was there for years. He's one of my favorites." The officer believed that the director basically wanted him to "get them out of here." The officer then approached appellant, who was leaving the park, to investigate the incident and give appellant a trespass warning based on the director's request.
Based on the record before us it is clear that appellant believed he had a right to be on the property, as he had been on many previous occasions, and that he did not *967 receive any notice not to be on the property until the deputy approached him.
A similar situation occurred in Slydell, where police officers, while patrolling for trespassers, saw the defendant and did not recognize him as being a resident of the neighborhood. 792 So.2d at 669. As the officers approached the defendant to investigate him for trespassing, the defendant began to walk the other way. The defendant appeared to be trying to hide something in his hand. When the officer asked him what was in his hand, the defendant ran away. Id. at 670. The officer grabbed the defendant and forced him to the ground and in the process recovered several pieces of crack cocaine. The defendant was convicted of resisting an officer without violence, which the appellate court reversed and remanded with instructions to discharge the defendant as to this charge. The court explained why the situation would be a consensual encounter instead of an investigatory stop:
We do not agree that an officer's bare suspicion that a person is trespassing, even when coupled with an agreement between the property owner and the police for officers to stop and investigate persons whom the officers do not recognize as residents, is sufficient for an investigatory stop and detention. A property owner's grant of authority to police officers to investigate trespassing on the owner's premises does not confer any greater authority upon law enforcement during police-citizen contact than do our Constitution and laws. Officers still need a reasonable and articulable suspicion that a person is engaged in criminal activity for a Terry stop.
Slydell, 792 So.2d at 672; see also In the Interest of B.M., 553 So.2d 714, 715 n. 2 (Fla. 4th DCA 1989) (A stop to inform trespassers of an order to leave is more akin to a "mere encounter" than a "stop" for constitutional analysis.).
In his concurring opinion, Judge Klein agrees that there was no reasonable suspicion of a crime, but states that an officer may detain people in certain circumstances to execute a legal duty. He compares this situation with the authority to stop an individual for a traffic infraction. This comparison equates a violation of a traffic law to a potential criminal violation simply because they both can be described as non-criminal. I disagree. Courts have explicitly held that the violation of a traffic law provides officers with the constitutional grounds to make a stop. Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). This holding conforms with the Fourth Amendment in that there must be a violation of a traffic law. As explained in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979):
[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.
Id. at 663, 99 S.Ct. 1391. It is the violation of law that makes a traffic stop constitutional. In contrast, stopping someone who is incapable of violating the law, that is the basis for the stop, disregards their constitutional protections.
Even if we are to assume that a detention is proper to issue a trespass warning as contemplated by the opinion in Rivers v. Dillards Department Store, 698 So.2d 1328, 1332 (Fla. 1st DCA 1997), it still must be "reasonable under the circumstances." What was reasonable for the *968 officer, under these circumstances, was to simply tell appellant to leave the property and that he is not allowed on the property in the future. The officer admitted that a trespass warning can be given verbally; therefore, detention is not a necessary legal duty in executing a trespass warning.
Regardless of whether giving a trespass warning is a legal duty, an officer is not allowed to detain a person without constitutional grounds. Ordering appellant to stop, while appellant is in the process of leaving, and to return so the officer could give him a trespass warning is a detention. The Fourth Amendment does not contemplate that a potential criminal violation is a valid reason to support a detention. As a result, the officer did not properly execute a legal duty in detaining appellant in order to give him a trespass warning. I would reverse and remand with directions to discharge appellant.
NOTES
[1] "Indeed, the principal function of [a police officer's] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal-to `enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" Wayne R. LaFave, Search and Seizure § 9.5(b) (4th ed.2004).