KLEIN, J.,
concurring specially.
The incident began when the director of a public park called the police because of an altercation between adult soccer players she did not know and juvenile basketball players she did know. She testified that after officers came and sent the adults away, she called the police again to inform them that she had not wanted the people using the park to have to leave, but only wanted the altercation ended. She also said that another officer then came to the park, and she asked him to try to find out what the problem had been. The next thing she observed was the arrest of appellant.
In contrast to her testimony, the officer who arrested appellant testified that she had told him to ask the boys to leave the park. He testified that as he walked toward the park, he saw appellant getting on his bike, and he called appellant over. The officer explained that he intended to “trespass him from the property” and that he gave appellant a verbal trespass warning based on the authorization of the park director. At this point, according to the officer, appellant became aggressive and stated: “that I wasn’t shit, that he kicked my ass. He told me, ‘F— you,’ and just basically just obstructing my investigation.” At one point appellant clenched his fists and looked the officer in the eye, putting the officer in fear of confrontation. Appellant admitted the officer asked him to leave the park, and that he refused to give the officer his name or sign a trespass warning.
The officer then arrested appellant, and he was charged with disorderly conduct and resisting an officer without violence. The trial court found appellant not guilty of the former, but guilty of the latter, and appellant contends that his motion for judgment of acquittal should have been granted.
In order to prove the crime of resisting an officer without violence, it must be shown that the officer was engaged in the lawful execution of a legal duty and that the action by the defendant constituted obstruction or resistance of the lawful duty. § 843.02, Fla. Stat. (2005); Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001). The only argument appellant raises is that the state failed to prove that the officer was engaged in the lawful execution of a legal duty when the officer called him over to give a trespass warning.
Because the evidence is reviewed in a light most favorable to the state, E.A.B. v. State, 851 So.2d 308 (Fla. 2d DCA 2003), the conflict between the testimony of the park director, who said that she did not *962 want the boys to be asked to leave, and the testimony of the officer, who testified that she instructed him to ask them to leave, is resolved in favor of the officer.
Appellant relies on Slydell, but Slydell is distinguishable in that the officers in Slydell had no reasonable suspicion to stop the defendant and had not been asked to give a trespass warning or to remove the defendant. Slydell accordingly was free to walk away.
In L.K.B. v. State, 697 So.2d 191 (Fla. 5th DCA 1997), an officer was attempting to obtain identification from a juvenile in order to complete a trespass warning, and the issue raised was whether the officer was performing a legal duty. The majority affirmed the conviction for resisting an officer without violence based on reasoning that the officer had a reasonable suspicion that the juvenile was about to commit or had already committed an assault against a customer of a store. Judge Griffin, however, dissented, explaining:
The plain truth is that this defendant was arrested because he ran off when the officer approached him to give him a trespass warning. The problem is that a police officer cannot detain a person and force him to identify himself for the purpose of giving a trespass warning. Section 810.09, Florida Statutes provides that a person trespasses in violation of that statute by willfully entering or remaining in any property other than a structure or conveyance as to which notice against entering or remaining has been given. 810.09(1), Fla. Stat. (1995). This property owner had a right to ask the defendant to leave his property, and the defendant had the right, as well as the duty, to do so. The fact that the property owner elected to have the police do the asking did not affect this defendant’s right to leave without interference. It also does not confer any special rights upon the officer who is merely acting on behalf of the property owner. The officer’s agreement to convey the trespass warning does not convert this into a “legal duty.”
The correct analysis of a case such as this is found in In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989).
L.K.B., 697 So.2d at 195 (Griffin, J., dissenting). I agree with Judge Griffin that there was no reasonable suspicion to conduct an investigatory stop in L.K.B. or in this case, but I do not believe that is determinative of whether the officer was in the performance of a legal duty.
B.M., cited by Judge Griffin, involved suppression, not resisting without violence, and this court held that the officers had no founded suspicion to stop the juvenile, who was standing with a group of people in the parking lot of a closed grocery store. The trial court denied the motion to suppress on the ground that the juvenile had remained on the property after being asked to leave. There was no evidence, however, that the juvenile had been warned against trespassing or had remained on the property after being ordered to leave. This court explained: “Even if we assume that the police officers had authority from the owner to remove trespassers, their authority in this case where no warning against trespassing was posted was limited to conveying an order to depart the premises.” Id. at 715. This court further stated in footnote 2:
A stop to inform trespassers of an order to leave required under section 810.09(2)(b), Florida Statutes, is more akin to a ‘mere encounter’ than a ‘stop’ for constitutional analysis. This is not a stop based on founded suspicion, because the crime of trespass on unposted land does not occur until after trespasser is warned to depart and fails to do so.
B.M. is not controlling here because the precise issue involved in this case, whether *963 an officer giving a trespass warning is performing a legal duty, was not at issue in B.M.
The trespass statute requires, as an element, notice against entering or remaining on the premises by “actual communication” or other means. It is certainly not unusual for the police to be asked to communicate the notice or warning. Judge Sha-hood, in his dissent, concludes that when the officer called appellant over to give him a warning, this became a seizure which violated the Fourth Amendment because there was no reasonable suspicion that a crime had been committed. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although I agree that there was no reasonable suspicion that a crime had been committed, that is not the end of the analysis. As the court explained in Rivers v. Dillards Department Store, Inc., 698 So.2d 1328, 1332 (Fla. 1st DCA1997), a civil case:
[The trespass of a structure statute] does not provide an absolute basis for the detention, since the warning had not yet been issued, although we agree that, implicitly, some detention may be necessary in order to issue the warning alluded to in that section. The detention still must be reasonable under the circumstances.
"When an officer pulls a driver over for a traffic infraction, which is not a crime, there is no reasonable suspicion of a crime, but it is permissible under the Fourth Amendment. As the Supreme Court explained in Delaware v. Prouse, 440 U.S. 648, 653-55, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (footnotes omitted),
The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile [for a traffic infraction] and detaining its occupants constitute a “seizure” within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of “reasonableness” upon the exercise of discretion by government officials, including law enforcement agents, in order “ ‘to safeguard the privacy and security of individuals against arbitrary invasions....’” Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual’s Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against “an objective standard,” whether this be probable cause or a less stringent test. In those situations in which the balance of interests precludes insistence upon “some quantum of individualized suspicion,” other safeguards are generally relied upon to assure that the individual’s reasonable expectation of privacy is not “subject to the discretion of the official in the field,” [citations omitted] [emphasis added].
In my opinion the officer who was called to give the trespass warning in this case was acting in a situation and in a manner contemplated by Prouse. A nd he was in the performance of a legal duty contemplated by our trespassing statute when appellant resisted. It is on that basis that I agree to affirm.