758 So.2d 1239 (2000)
Jeffrey Clifford BALL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-2535.
District Court of Appeal of Florida, Fifth District.
May 26, 2000.
*1240 James B. Gibson, Public Defender, and Dee Ball, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Jeffrey Clifford Ball ["Ball"] appeals his convictions for cocaine possession and resisting arrest with violence. Finding no error in the lower court's denial of his motions for judgment of acquittal, we affirm.
At trial, the State presented evidence that on September 11, 1998, at approximately 5 p.m., Officer Chris Myers and Sergeant Allison Skiles were on routine patrol in the area of 414 North Parramore. The officers were dressed in uniform but were traveling in an unmarked vehicle. As they approached the 414 Liquor Store, they observed Ball and a second man engaging in what appeared to be a hand-to-hand transaction. There was evidence that the transaction occurred within 1,000 feet of a church. Officer Myers testified that he observed Ball hand the other male a small object, and that the second male in turn handed Ball money which he put in his pocket. Sergeant Skiles testified that she thought, based on her experience, that the two men were engaged in a drug transaction.
Officer Myers testified that he pulled his vehicle into an adjacent driveway, which was about fifteen feet from Ball, and he then saw Ball hide his right hand, which was closed, "behind a green newspaper box which he was standing right next to." Myers said that the move was "sudden" and had been made only after Ball had seen him. Officer Myers testified that upon seeing him, the second male put his left hand on the newspaper box, and then put it up to his mouth as if he was putting something inside.
Officer Myers walked over to the newspaper box where Ball was standing, while Officer Skiles followed the second man around to the back of the liquor store. As Myers approached, Ball asked him, "What are you looking at?" Officer Myers checked behind the newspaper box to see if Ball had dropped anything behind it. He found a Tylenol type bottle directly behind the box, which contained twelve pieces of crack cocaine cut in varying sizes. On cross-examination, Officer Myers admitted that he did not see the bottle in Ball's hand and there were no fingerprints on the bottle.
As Officer Myers opened the bottle, Ball started to walk away. Officer Myers told him to stop several times. Ball eventually turned around and told Myers, "Man, you better leave me alone." He also denied any wrongdoing. Myers told Ball he was under arrest and repeatedly told him to turn around and put his hands behind his back. Ball did not comply, and Officer Myers took out his pepper spray and threatened to use it on Ball. Ball still denied doing anything, and still refused to comply, so Officer Myers used pepper gas to subdue him. Ball stopped walking and put his hands up to his face. Then, he turned around and put both of his hands on the burglar bars which covered the liquor store windows. Officer Myers and Sergeant Skiles tried to pry Ball's hands off the burglar bars, but Ball had too strong a grip. At one point, however, he took a swing with his elbow at Myers and then regripped the bars. Officer Myers then attempted to use a knee strike on Ball, but it did not work. Ball finally let go of the bars after Officer Myers threatened him with a baton. The officers found marijuana in Ball's front pocket during a search incident to his arrest.
Officer Myers was asked by the prosecutor, "And in this case, Officer, was the sole motion of the defendant concealing his *1241 hand behind a newspaper boxwas that the whole reason or the sole reason that you charged this defendant with possession with intent to sell or deliver cocaine?" Officer Myers responded:
Not just the motion; it was the fact that his hand hadhis hand was closed as if there was something in it, and he stuck it behind the box. And when he pulled it out, the hand was opened. I go behind the box, and there is a little bottle of drugs after I have just observed him make what I believe to be a drug deal. When I put all of those things together, that leads me to believe that he dropped that bottle back there, and there was nothing else back there that could have dropped.
Officer Myers also testified that Ball did not try to leave until he picked up the bottle.
Ball contends on appeal that this evidence was insufficient to show a prima facie case of possession of cocaine because no one had actually seen him in possession of the cocaine. This argument is based on the rules which apply where constructive possession is non-exclusive. Where constructive possession is non-exclusive, knowledge of the presence of the contraband and the ability to control it cannot be inferred, but must be established by "independent proof." Chicone v. State, 684 So.2d 736 (Fla.1996); Brown v. State, 428 So.2d 250 (Fla.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); T.W. v. State, 666 So.2d 1001 (Fla. 5th DCA 1996); E.A.M. v. State, 684 So.2d 283, 284 (Fla. 2d DCA 1996).[1] It is frequently said that "[s]uch proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband, or of evidence of incriminating statements and circumstances, other than the mere location of the substance, from which a jury might lawfully infer knowledge by the accused of the presence of the contraband on the premises." Murphy v. State, 511 So.2d 397, 399 (Fla. 4th DCA 1987).
In this case, there were incriminating facts and circumstances tending to show that Ball had knowledge of the presence of the cocaine and the ability to control it. This is not a case in which the evidence shows no more than that Ball and others were simultaneously found in proximity to illegal drugs. As this court recently explained in Green v. State, 754 So.2d 163 (Fla. 5th DCA 2000):
We do not ordinarily permit an inference of ability to control to be raised by mere proximity to the substance because of the danger that an innocent bystander or social or business visitor might thus be improperly implicated in a crime. That danger diminishes as the amount of circumstantial evidence that the accused was more than an innocent bystander increases.

Id. (emphasis added), quoting Jean v. State, 638 So.2d 995, 997 (Fla. 4th DCA), review denied, 645 So.2d 452 (Fla.1994). See also Fla. Std. Jury Instr. (Crim.) 300 (July 1997).
Ball also contends that the evidence is insufficient to support his conviction for resisting arrest with violence because although Ball "swung an elbow" at Officer Myers after being sprayed with pepper gas, there is no evidence from "which it can be inferred that appellant's actions were willful and not in reaction to the pepper gas...." In this case, there are two views which can be taken of Ball's actions after being sprayed with pepper spray. One is that his actions were involuntary. The second is that he voluntarily let go of the burglar bars and swung at Officer Myers, as shown by the fact that thereafter he again gripped the burglar bars. "[C]ourts should not grant a motion *1242 for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Woods v. State, 733 So.2d 980, 985 (Fla.1999), citing Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
AFFIRMED.
ANTOON, C.J., and THOMPSON, J., concur.
NOTES
[1] By contrast, knowledge of the presence of the contraband and the ability to control the contraband can be presumed or inferred where the State offers evidence of actual possession or exclusive constructive possession. Chicone, 684 So.2d at 739-40; Gartrell v. State, 626 So.2d 1364 (Fla.1993).