EVANDER, J.
The State appeals from an order granting Derrick Odom’s post-verdict motion for judgment of acquittal on the charge of trafficking in methamphetamine. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.140(c)(l)(E)(State may appeal order granting motion for judgment of acquittal after jury verdict). Because the State presented sufficient evidence to support the jury verdict, we reverse.
Odom was charged with, inter alia, manufacturing of methamphetamine,[1] possession of drug paraphernalia,[2] and trafficking in methamphetamine.[3] Three co-defendants were also charged with manufacturing of methamphetamine and trafficking in methamphetamine. However, they entered into plea agreements with the State and subsequently testified at Odom’s trial.
The evidence, taken in the light most favorable to the State, reflects that at approximately 5:30 p.m. on September 12, 2008, detectives began conducting surveillance of Odom’s residence, a single-wide trailer. Two of the co-defendants were observed entering the trailer at approximately 10:00 p.m. About an hour later, Odom arrived in a pick-up truck and entered the residence. Odom was later observed carrying large boards out to the truck, backing the truck over the boards, and then re-entering the trailer.
Around midnight, a marked deputy’s vehicle was brought to the scene because the detectives decided to conduct a “knock and talk.” The smell of acetone (a chemical used in the manufacture of methamphetamine) could be detected seven to ten feet from the trailer. When an officer knocked on the front door, Odom exited the back door. After being stopped, Odom advised a deputy that three children were in the residence. Deputies went into the residence and observed the three co-defendants-one of whom was attempting to pour a liquid from a Mason jar down the kitchen sink. The deputies directed the co-defendant to cease from any effort to dispose the liquid, and then located the three children. All of the individuals were then removed from the trailer so they could be decontaminated by a hazardous response unit. After obtaining a search warrant, the detectives re-entered the trailer to conduct a search.
Inside the trailer, the detectives found what was described as an “active meth lab.” The substance which a co-defendant had attempted to pom- down the sink was identified as pseudoephedrine. Fifty-four and one-tenth (54.1) grams of the pseu-doephedrine was recovered. The detectives also found numerous chemicals, products, and equipment commonly used for the manufacture of methamphetamine.
In the pick-up truck that had been driven by Odom, a two-liter Mountain Dew bottle was found beneath a tool box. The bottle contained 434.7 grams of a liquid containing methamphetamine. The large boards that detectives had witnessed Odom carry outside and back-over with the truck had newspaper present between them. Inside the newspaper were iodine crystals — a necessary ingredient for the production of methamphetamine. The *49 truck was found to be registered to Odom’s stepmother.
At trial, two of the co-defendants testified that on the day in question, Odom was actively engaged in the manufacturing of methamphetamine. They detailed Odom’s specific activities in furthering the manufacturing process. The final methamphetamine product had not been generated pri- or to law enforcement intervention.
At the conclusion of the State’s case, Odom moved for a judgment of acquittal on all counts. On the trafficking count, Odom’s argument was that the State failed to prove that he had knowledge of the presence of the pseudoephedrine found in the house or the methamphetamine found in the truck, or that he was ever in possession of same. The trial court reserved ruling on this count.
The jury ultimately returned a verdict, finding Odom guilty of 1) the lesser included offense of attempted manufacture of methamphetamine; 2) possession of drug paraphernalia; and 3) trafficking as charged with a special finding that the quantity involved was twenty-eight (28) grams or more but less than two hundred (200) grams.
Odom subsequently renewed his motion for judgment of acquittal as to the trafficking count. He argued that the jury verdict must have been based on the methamphetamine found in Odom’s stepmother’s truck and the State had not produced sufficient evidence to establish that Odom had actual or constructive knowledge of the illegal drugs found in the truck. The State argued that the trafficking amount found by the jury (between 28 and 200 grams) was consistent with the 54.1 grams of pseudoephedrine found in Odom’s residence and which a co-defendant was attempting to pour in the sink when deputies entered the trailer. The State further correctly observed that while the manufacturing count referenced methamphetamine only, the trafficking count brought against Odom alleged that he had unlawfully and knowingly manufactured or possessed methamphetamine and/or pseudoephed-rine. The trial court granted Odom’s motion without explanation.
A motion for judgment of acquittal challenges the legal sufficiency of the evidence. Bufford v. State, 844 So.2d 812, 813 (Fla. 5th DCA 2003). The motion should be denied if the State presents competent evidence to establish each element of the offense. Id. In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence. Id. The record is reviewed de novo to determine whether sufficient evidence supports the verdict. Id.
Here, the State produced sufficient evidence on the trafficking count to support the jury’s verdict. The second amended information filed against Odom alleged that he did “unlawfully and knowingly ... manufacture ... or have in his possession a controlled substance, to wit: Methamphetamine and/or Pseudoephed-rine, or a mixture containing Methamphetamine or Pseudoephedrine ...” Even assuming, without so holding, that the State’s evidence was insufficient to prove Odom manufactured or possessed the methamphetamine found in the pick-up truck, the evidence was sufficient as to the 54.1 grams of pseudoephedrine[4] located in plain view in Odom’s residence.
*50 First, the evidence was sufficient to establish that Odom had participated in the manufacturing of the pseudoephedrine. One co-defendant specifically testified that Odom had applied chemicals to Sudafed pills to extract the ephedrine, and another co-defendant testified that Odom had given instructions to further the manufacturing process.
Alternatively, the evidence was more than sufficient to permit the jury to determine that Odom had been in constructive possession of the pseudoephed-rine. Constructive possession exists where a defendant does not have actual, physical possession of the controlled substance, but knows of its presence on or about the premises, and has the ability to exercise and maintain control over the contraband. Harris v. State, 954 So.2d 1260, 1262 (Fla. 5th DCA 2007). Possession of illegal drugs may be by joint constructive possession. Armbruster v. State, 453 So.2d 833, 834 (Fla. 4th DCA 1984). Thus, the State may prove joint possession by two or more defendants without proving actual physical possession by any one defendant. Id. at 834-35.
If the possession is non-exclusive, knowledge of the presence of the contraband and the ability to control it cannot be inferred, but must be established by independent proof. J.A.C. v. State, 816 So.2d 1228, 1229 (Fla. 5th DCA 2002). Proof of the knowledge element may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband, or of evidence of incriminating statements and circumstances, other than the mere location of the substance, from which a jury might lawfully infer knowledge by the accused of the presence of the contraband on the premises. Ball v. State, 758 So.2d 1239, 1241 (Fla. 5th DCA 2000). Where a defendant does not have exclusive possession of the premises, proof of the control element can still be met where the contraband is located in plain view in a common area. Brown v. State, 428 So.2d 250, 252 (Fla. 1983). The Brown case is particularly instructive. There, law enforcement officers found several pounds of marijuana and lesser quantities of hashish and PCP scattered, in plain view, throughout Brown’s residence. The issue raised on appeal by Brown was whether those facts created a prima facie case of constructive possession. The Florida Supreme Court affirmed Brown’s conviction, stating:
In the instant case the knowledge element is met because the contraband was in plain view in common areas throughout the house. The dominion and control element is met because Brown, as resident owner of his home, had control over the common areas. Therefore, the elements of knowledge and control have been satisfied, and, as the district court found, the facts presented at trial were sufficient to create a jury question as to constructive possession.
Brown, 428 So.2d at 252 (footnote omitted).
Here, as in Brown, there was evidence that Odom was the occupant of the mobile home where the pseudoephedrine was seized, that the pseudoephedrine was in plain view and in a common area, and further, that Odom had been involved in its manufacture. It was error for the trial court to have granted Odom’s motion for judgment of acquittal.
REVERSED and REMANDED for reinstatement of the jury’s verdict and sentencing on that charge.
COHEN and JACOBUS, JJ., concur.

. §§ 893.13(l)(a) and 893.03(2)(c)4„ Fla. Stat (2008).

. §§ 893.145 and 893.147, Fla. Stat. (2008).

. §§ 893.135(l)(f) and 893.03(2)(c), Fla. Stat. (2008).

. Ephedrine and pseudoephedrine are products commonly used in the illegal manufacture of methamphetamine.