837 So.2d 541 (2003)
Keydrum BLUE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1558.
District Court of Appeal of Florida, Fourth District.
February 12, 2003.
*543 Carey Haughwout, Public Defender, and Margaret Good-Earnest, Assistant Public Defender, West Palm Beach, for appellant.
Charlie Crist, Attorney General, Tallahassee, and Barbara A. Zappi, Assistant Attorney General, Fort Lauderdale, for appellee.
HAZOURI, J.
Keydrum Blue (Blue) was charged by information with robbery with a firearm (Count I), burglary of a dwelling (Count II) and resisting arrest without violence (Count III) resulting from a bank robbery and the subsequent series of events occurring on May 5, 1999. In February 2000, based on a court ordered evaluation, the trial court found Blue to be incompetent to stand trial. In November 2000, based on information from the Department of Children and Families that Blue no longer met the criteria for continued commitment, the trial court set a date for a competency hearing. At that hearing, the trial court did not conduct a competency determination but instead acquiesced to Blue's counsel's request for a confidential evaluation of Blue. On January 22, 2001, the parties indicated they were ready for trial and the trial commenced on January 29, 2001. However, there was never a written order finding Blue to be competent to stand trial.
The jury found Blue guilty of grand theft, (a lesser included offense of robbery with a firearm), trespass, (a lesser included offense of burglary of a dwelling), and resisting arrest without violence. Blue was determined to be a habitual felony offender and sentenced to ten years in prison.
Blue asserts four points on appeal: 1)the failure to adjudge him competent prior to trial violated due process; 2) the court erred in denying defense counsel's motion to suppress because he was detained without a founded suspicion and later arrested without probable cause; 3) the trial court erred in denying his motion for judgment of acquittal on count III, obstructing a law enforcement officer without violence, as the officer was not in the lawful performance of a legal duty and, therefore, Blue was not lawfully detained and had a right to walk or run away and not cooperate with the officer's questioning; and 4)the trial court erred in sentencing him as a habitual felony offender because the State's evidence of habitual felony offender qualifications was insufficient without fingerprint evidence.
In his first point on appeal, Blue argues that after the trial court found that he was incompetent to stand trial, there had to be a subsequent finding that he had regained his competency in order to proceed. The State concedes that Blue is correct and agrees that Blue's conviction and sentence should be reversed and the matter remanded for a new trial after a competency hearing is held and Blue is found to be competent to proceed to trial. We agree that Blue's argument is a correct statement of law and accept the State's *544 concession. Therefore, we reverse Blue's conviction and sentence and remand for a new trial after a competency hearing is held and once Blue is adjudged competent to proceed to trial. See Jackson v. State, 810 So.2d 545 (Fla. 4th DCA 2002). Although we reverse for a new trial on this basis, we also address points two and three.
Blue contends that the trial court erred in denying his motion to suppress. Appellate courts should accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but should independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution. See Connor v. State, 803 So.2d 598, 608 (Fla.2001).
At the hearing on the motion to suppress, Detective Bader testified that when he first approached Blue on May 5, 1999, he only intended to talk to Blue and ask him some questions. He did not think that Blue was the suspect because Blue did not match the description given in the BOLO.[1] Blue had come from the direction of where the robbery had occurred and the detective wanted to ask him if he had seen anything. The detective approached Blue and asked him if he could speak to him. Blue then put down the crate that he was carrying and walked over to the detective. He answered a few questions but gave conflicting answers over what he claimed to have seen. The detective sensed that something was not right and he noticed Blue beginning to get very nervous. Blue turned around and picked up the crate. The detective said, "Wait a minute, I just want to find out what you saw down there." Blue started to walk away and again the detective said, "wait a minute." At that point, Blue began running. The detective yelled for him to stop. The detective began to chase Blue and Blue dropped the crate as he was running away. The crate was later recovered and found to contain a T-shirt "mask" linking Blue to the bank robbery. In his motion to suppress, Blue requested the trial court suppress from use as evidence the crate and its contents.
As the basis for his motion, Blue argues that his initial stop was an illegal detention by Detective Bader without a founded suspicion and in violation of the Fourth Amendment. Blue argues that even if the initial questioning was a consensual encounter, the transaction transformed into a Fourth Amendment seizure during the course of the questioning. Therefore, Blue argues that the crate and its contents should be suppressed since he dropped the crate during an alleged illegal seizure.
The instant case is very similar to State v. Bartee, 623 So.2d 458 (Fla.1993). In Bartee, a police officer approached Bartee and asked him if he had seen a suspect who had fled from the officer. Id. at 459. Bartee gave an answer, but appeared very nervous and hesitant to talk to the officer. After a brief conversation, Bartee took off running. The officer chased Bartee and told him to stop. As Bartee was running away, he discarded a pill bottle. The officer retrieved the bottle which contained crack cocaine. The trial court found that because the officer lacked probable cause to chase Bartee or to order him to stop, the acts constituted a Fourth Amendment *545 seizure. The trial court granted Bartee's motion to suppress because it determined that Bartee's act of throwing the pill bottle was a result of the officer's unlawful conduct.
The Florida Supreme Court reversed and held that the chase and call for Bartee to stop did not constitute a seizure and therefore the cocaine found in the bottle should not have been suppressed. Id. The Court relied on California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), to support this conclusion. In applying Hodari, the Court noted that the crucial issue in Hodari was whether at the time the defendant dropped the cocaine, he was seized within the meaning of the Fourth Amendment. The Florida Supreme Court went on to state:
Although the Court assumed that the police pursuit was a `show of authority' calling upon Hodari D. to halt, the Court held that Hodari D. had not been seized as contemplated by the fourth amendment at the time of the abandonment, since at this point in time, he had not been tackled or otherwise `submitted to the show of authority.' Therefore, the recovery of the cocaine that had been abandoned while he was running was not the fruit of an unlawful seizure.
Bartee, 623 So.2d at 459.
Blue argues that the instant case is distinguishable because he did submit to Detective Bader's request to come over and answer some questions. Also, Blue argues that Detective Bader positioned his car as an obstacle on the sidewalk in Blue's path, thereby constituting a seizure. We disagree.
A seizure occurs when a person is physically subdued by police or submits to an officer's show of authority. The determinative issue in the instant case is whether Blue abandoned the crate prior to the seizure/submission to authority or after the seizure. This court addressed this issue in State v. Woods, 680 So.2d 630 (Fla. 4th DCA 1996). In Woods, the police officer approached the defendant who proceeded to walk away. Id. at 631. The officer yelled for the defendant to stop, but the defendant did not stop. The officer began to chase the defendant who dropped two baggies of crack cocaine and a handgun. This court relied on Hodari and held: "[A]n unlawful seizure takes place only if the person either willingly obeys or is physically forced to obey the police request. As such, there is no unlawful seizure when the person `drops then stops', even where the drop occurs after an order to stop." Woods, 680 So.2d at 631.
In the instant case, Blue willingly walked over to Detective Bader when the detective first called to him. However, this does not mean that Blue submitted to his authority. A citizen may voluntarily respond to questioning or refuse to do so, but is still free to leave. At this point, Blue was free to leave. Even when Blue started to run away, despite the fact that Detective Badar called for him to stop, he still had not been seized under the law. Therefore, the recovery of the crate was not due to an illegal seizure, but rather Blue's abandonment. The trial court did not err in denying the motion to suppress the crate and its contents.
The motion to suppress also requested the trial court to suppress from use as evidence currency found on Blue after his arrest. As the basis for this argument, Blue contends that at the time the officers arrested him, there was no probable cause for the arrest and, therefore, the money found on him during the arrest should be excluded.
At the hearing, Detective Bader testified that while Blue was running away, he saw him jump over three fences and enter *546 three separate yards. At this point the detective was on the radio trying to get some help. The police officers that responded to the call set up a three or four block perimeter around the area. One of the officers who responded, Deputy Lord, was stopped by a woman in the area where Blue had been seen fleeing. The woman told him that she observed a black man jump over the fence and immediately thereafter she heard a window break. The officers surrounded the building (a residential duplex) and saw that one of the windows to the back bedroom was broken. At that point, the officers did not know if anyone was actually in the duplex. The officers entered the duplex and arrested Blue. During his arrest, they searched him and found a large amount of currency.
At the time Blue was arrested, the officers did not know the contents of the crate that Blue had previously dropped. The only things the officers knew was that Blue had run from Detective Bader through several yards, jumped at least three fences, and that a woman told an officer that she saw a black man run through her yard and then heard a window break.
Blue argues that at the time of his arrest, the officers had no reasonable belief that he had committed an armed robbery, burglary, trespass or obstructing an officer in the lawful performance of his legal duty.
Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it. See State v. Cortez, 705 So.2d 676, 678 (Fla. 3d DCA 1998). The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based. "An officer is permitted to take a realistic view of the facts in making a probable cause determination, `for probable cause is a matter of practicalities, not technicalities.' "Id. (quoting State v. Russell, 659 So.2d 465, 468 (Fla. 3d DCA 1995)).
The State contends that there was sufficient evidence based on the witness' statements to constitute probable cause. In addition, the State argues that the officers did not know that the duplex was empty and that they had a reasonable belief that someone had entered the duplex to commit an offense. We agree.
In State v. Cote, 547 So.2d 993 (Fla. 4th DCA 1989), the police officer saw two defendants dressed in dark colored clothes and carrying a bag, emerge from behind a house. Id. at 994. They walked hurriedly and jumped over a fence bordering a nearby residence. The officer found them crouched behind shrubbery near the residence and told them they were under arrest. The defendants fled and the officer chased them. The officer finally found them hiding and placed them under arrest. At that point, the officers did not know that a burglary had occurred. Id. at 995. The defendants moved for suppression of the items found on them at the time of their arrest on the basis that the officer did not have probable cause to arrest them.
This court noted that although flight alone will not provide probable cause that a crime is being committed, it can provide additional support for the officer's assessment that the defendants were involved in criminal activity. Id. n. 1. This court held that probable cause existed and stated, "The defendants' actions speak for themselves in that regard and the reasonable inferences to be drawn from their actions all support the officer's conclusion that there was probable cause to arrest for *547 loitering and prowling, and trespass, as well as suspicion of burglary." Id.
In the instant case, taking into consideration all the circumstances including Blue's flight, his actions in jumping over numerous fences, the statements from the witness that she saw a black man run through her yard and then heard a window breaking, and the fact that the officers saw a broken window in the duplex gave the officers probable cause to believe that Blue had committed or was committing a crime. Therefore, the trial court did not err in denying the motion to suppress.
As to point three, Blue argues that the trial court erred in denying his motion for judgment of acquittal as the evidence was insufficient to establish the charge of obstructing an officer without violence because Blue was entitled to stop answering the detective's questions and walk away. We agree.
A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence. See R.T.L. v. State, 764 So.2d 871, 872 (Fla. 4th DCA 2000). We must review the record to determine whether there is sufficient evidence to support the jury's verdict. Id. For a conviction for resisting an officer without violence, the State must show that: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty. See Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001).
In Slydell, police officers, while patrolling for trespassers, saw the defendant and did not recognize him as being a resident of the neighborhood. Id. at 669. As the officers approached the defendant to investigate him for trespassing, the defendant began to walk the other way. The defendant appeared to be trying to hide something in his hand. When the officer asked him what was in his hand, the defendant ran away. Id. at 670. The officer grabbed the defendant and forced him to the ground and in the process recovered several pieces of crack cocaine. The defendant was convicted of resisting an officer without violence which this court reversed and remanded with instructions to discharge the defendant as to this charge.
In Slydell, when the officers first approached the defendant, their contact was not an investigative stop, it was a consensual encounter. For a consensual encounter, the officers did not need a founded suspicion of criminal activity. Id. at 673. They were authorized to approach him and ask him a few questions however, the defendant was also free to ignore the officers and walk away. We held that once the officers gave chase and subdued the defendant, the encounter became a stop or seizure. "Because the officers lacked objective reasons for believing that appellant was engaged in criminal activity, they lacked authority to stop and detain appellant. Thus, when appellant ran away from the officers, he was not unlawfully opposing or obstructing them in the lawful execution of a legal duty." Id. at 674.
The facts in the instant case are very similar to those in Slydell. When Detective Bader first approached Blue, he did not have a reasonable suspicion that Blue had committed a crime. However since it was a consensual encounter, he did not need a reasonable suspicion for his initial contact. Since it was only a consensual encounter, Blue was also free to ignore the detective and walk away. Therefore, under our holding in Slydell, when Blue ran away he was not unlawfully opposing or *548 obstructing Detective Bader in the lawful execution of a legal duty.
The State cites to Francis v. State, 736 So.2d 97 (Fla. 4th DCA 1999), for support. In Francis, the defendant was charged with resisting an officer without violence. The police officer had come to the defendant's home in response to a 911 call. Id. at 98. When he got to the house, the defendant intervened and stepped in front of him, telling him that "everything's okay" and that his services were not needed. The officer then found a boy that had been badly abused in another room. This court stated that it was undisputed that the officer was engaged in the lawful execution of a legal duty when he was investigating the 911 call. Id. at 99 n. 1. The defendant argued that her statement that everything was fine was per se insufficient to constitute obstruction. This court held that her statement in addition to her blocking the officer's path satisfied the requirement of obstruction.
In the instant case, since Blue was free to walk away, his actions cannot constitute obstruction. Otherwise, if Blue could be convicted of obstructing without violence, then he was not really free to walk away at all. The only remaining issue is whether his false statements to Detective Bader could constitute obstruction.[2] Blue's conduct does not rise to the level of obstruction. For the above stated reason, the trial court erred in denying the motion for judgment of acquittal for resisting arrest without violence. Therefore, we direct the trial court to enter a judgment of acquittal as to Count III.
As to point four, since Blue's conviction and sentence are being reversed, we need not address whether Blue was properly sentenced as a habitual felony offender.
Affirmed in part and reversed in part.
TAYLOR and MAY, JJ., concur.
NOTES
[1] Detective Bader had received a "be on the look out" for a bank robbery suspect in the area.
[2] The Information states that the conduct constituting the offense was Blue's fleeing, it does not state that the conduct was the false information provided.