LEWIS, J.
 

 Kerrick Parker, Appellant, challenges his convictions for resisting an officer without violence and burglary of a dwelling. Specifically, he contends the trial court erred in denying his motion to dismiss the former charge and his motion to suppress evidence that would have been dispositive of the latter. Both of these motions were based on the argument that the officer who attempted to, and ultimately did, detain Appellant lacked reasonable suspicion to do so. Finding no error in the trial court’s determination that the officer had reasonable suspicion to stop Appellant, we affirm its rulings on the motions to dismiss and to suppress without further discussion. However, Appellant also contends the trial court erred in denying his motion for judgment of acquittal as to the offense of resisting an officer without violence, charged pursuant to section 843.02, Florida Statutes (2005). The State concedes error on this point, admitting that it presented no evidence to support an inference that Appellant knew the officer was attempting to detain him. We agree. Because the State failed to present a prima facie case of resisting an officer without violence, we reverse the denial of the motion for judgment of acquittal as to that offense and remand for further proceedings consistent with this opinion.
 

 The facts pertinent to our decision are undisputed. One night in October 2005, at approximately 3:00 a.m., Officer Joshua Hendershott was on patrol, investigating a recent domestic battery from which the suspect had fled. The only information Hendershott had was that a domestic battery had occurred in the area where he was patrolling and that the suspect was an “unidentified black male” wearing “unknown clothing.” The streets were empty, except for two black males. He determined to approach these two individuals to ask if they had seen the domestic battery suspect. When Hendershott briefly shined his spotlight, both individuals ran. Once they began to run, Hendershott developed a suspicion that they were involved in a crime. Hendershott immediately lost sight of Appellant, as he ran through a wooded area that backs up to a residence. He then apprehended the other man and called for the assistance of a K-9 unit to track Appellant’s trail. The K-9 dog led Hendershott to the backdoor of a residence. He observed Appellant exit from this door and then apprehended him. Thereafter, Appellant was charged with resisting an officer without violence.
 

 Prior to trial, Appellant moved to dismiss the charge of resisting an officer without violence. The motion was denied, and the case proceeded to a jury trial. At trial, the court denied Appellant’s motion for judgment of acquittal as to the charge of resisting an officer without violence, and he was convicted and sentenced for that crime. On appeal, he argues that his flight from the police officer was insufficient to raise a reasonable suspicion that criminal activity was afoot and that the flight itself could not form the basis of a proper conviction for resisting an officer without violence. We agree in part and disagree in part.
 

 A trial court’s denial of a motion for judgment of acquittal is reviewed de novo to determine whether the evidence was legally sufficient to support a finding that the defendant committed each element of the crimes charged.
 
 Jones v. State,
 
 790 So.2d 1194, 1196-97 (Fla. 1st DCA 2001). To establish a prima facie case of resisting an officer without violence, the State must show that the officer
 
 *558
 
 had an “articulable well founded suspicion of criminal activity” to justify the attempt to detain the defendant and that the defendant had reason to believe the officer was attempting to detain him.
 
 See S.G.K. v. State,
 
 657 So.2d 1246, 1247 (Fla. 1st DCA 1995). In determining whether an officer had a reasonable suspicion of criminal activity, courts consider the totality of the circumstances.
 
 Huffman v. State,
 
 937 So.2d 202, 206 (Fla. 1st DCA 2006). Relevant factors include “the time of day; the appearance and behavior of the suspect; ... and anything incongruous or unusual in the situation as interpreted in light of the officer’s knowledge.”
 
 Id.
 
 (quoting
 
 Grant v. State,
 
 718 So.2d 238, 239 (Fla. 2d DCA 1998)).
 

 Flight, in itself, is insufficient to support a reasonable suspicion of criminal activity.
 
 S.G.K.,
 
 657 So.2d at 1248. Nonetheless, flight can be one factor, among others, that contributes to an officer’s reasonable suspicion of criminal activity.
 
 Blue v. State,
 
 837 So.2d 541, 546 (Fla. 4th DCA 2003). In
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 123-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the Supreme Court held that unprovoked flight in a high-crime area constitutes grounds for a “reasonable, articulable suspicion that criminal activity is afoot,” under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, the
 
 Wardlow
 
 Court upheld the reasonableness of a
 
 Terry
 
 stop where the defendant “fled upon seeing police officers patrolling an area known for heavy narcotics trafficking.” 528 U.S. at 121, 120 S.Ct. 673. The officers who stopped the defendant were part of a four-car caravan of officers.
 
 Id.
 
 The
 
 Wardlow
 
 Court opined that “[hjeadlong flight — wherever it occurs — is the consummate act of evasion” and that, while “[i]t is not necessarily indicative of wrongdoing, ... it is certainly suggestive of such.”
 
 Id.
 
 at 124. The
 
 Wardlow
 
 Court further stated, “[Unprovoked flight is not a mere refusal to cooperate. Flight, by its very nature, is not ‘going about one’s business’; in fact it is just the opposite.”
 
 Id.
 
 at 125 (citation omitted).
 

 Since
 
 Wardlow,
 
 flight has taken on a more significant role in the determination of the reasonableness of an investigatory stop. Even so, flight is still merely one factor that may be considered in such a determination and is not sufficient in itself to justify an investigatory stop.
 
 See F.E.A. v. State,
 
 804 So.2d 528, 529 (Fla. 1st DCA 2002). There must be some additional factor or factors, which, when combined with flight, would give rise to a reasonable suspicion that criminal activity is afoot.
 
 See, e.g., Wardlow,
 
 528 U.S. at 123-25, 120 S.Ct. 673. Presence in a high-crime area may be the additional factor necessary to support reasonable suspicion, but it is not the only factor that may justify an investigatory stop when combined with flight. For example, in
 
 Sinclair v. State,
 
 816 So.2d 149, 150 (Fla. 1st DCA 2002), this Court held that an officer had reasonable suspicion to stop the defendant after he fled from police, even though there was no indication that the flight occurred in a high-crime area. There, an officer received a complaint about a prowler.
 
 Id.
 
 Approximately an hour and a half later, at 2:00 a.m., he saw the defendant walking along a road he could have reached from the neighborhood where the prowling complaint originated.
 
 Id.
 
 When the defendant saw the officer’s patrol vehicle, he began walking in the opposite direction, and when the officer indicated he wanted to speak with the defendant, he again turned and began walking in the opposite direction.
 
 Id.
 
 This set of circumstances was sufficient to justify an investigatory stop.
 
 Id.
 
 Thus, unprovoked flight may give rise to a reasonable suspicion of criminal activi
 
 *559
 
 ty even when the flight does not take place in a high-crime area, depending on the remaining circumstances of the case.
 

 Appellant argues that the Third District’s opinion in
 
 D.T.B. v. State,
 
 892 So.2d 522 (Fla. 3d DCA 2004), supports reversal. The
 
 D.T.B.
 
 court recognized a distinction to be made in cases involving unprovoked flight: while a
 
 Terry
 
 stop may be justified based on such flight, a charge of resisting an officer without violence cannot be supported without something more.
 
 See id.
 
 at 524-25. In
 
 D.T.B.,
 
 officers saw the defendant standing by a tree where the officers had observed drug transactions in the past and determined to approach him for a “voluntary field interview.” When they pulled up to the area, the defendant ran away, and the officers yelled, “Stop, Police.”
 
 Id.
 
 The defendant continued to run until he was caught and arrested.
 
 Id.
 
 at 523. He was later charged with and convicted of resisting arrest.
 
 Id.
 
 Opining that
 
 “Wardloiu
 
 did not criminalize running from the police” and that “the
 
 Wardlow
 
 Court did not intend for flight to be used as a justification for arrest and subsequent prosecution,” the
 
 D.T.B.
 
 court reversed the denial of the defendant’s motion for judgment of acquittal.
 
 Id.
 
 at 524. According to the Third District’s view, unprovoked flight can be the final factor triggering a reasonable suspicion sufficient to authorize a
 
 Terry
 
 stop, but that flight cannot form the basis of a conviction for resisting an officer without violence.
 
 See id.
 
 at 524-25. That conviction would be improper because in such circumstances, the fleeing person is not obligated to submit to police authority until the moment when he flees.
 
 See id.
 
 We agree with this position.
 
 [1]
 

 Here, Officer Hendershott was aware of the following facts when he decided to chase Appellant: a domestic battery had recently been committed by a black male approximately one block away; the domestic battery suspect was at large; it was approximately 3:00 a.m.; there were two black males on the street, which was otherwise empty; and they both ran when he shined a spotlight in their direction. Hendershott testified that he did not suspect Appellant of any crime until he began to run. However, this admission does not mean that the only factor Hendershott considered in deciding to chase Appellant was that he fled; it was simply the final factor that triggered his suspicion.
 

 We agree with Appellant that, pri- or to the time when he began to run, Hendershott did not have grounds to stop him. However, we hold, consistently with
 
 Sinclair,
 
 that once Appellant began to run, Hendershott had a reasonable suspicion to conduct an investigatory stop, based on the additional factors of the time of night, the emptiness of the street, and the recent occurrence of a crime in the near vicinity. If Hendershott had commanded Appellant to stop, he would have been obligated to do so. There was no evidence that Hender-shott commanded Appellant to stop or that Appellant was otherwise aware that he was obligated to do so. We recognize that in some circumstances, the facts surrounding a chase may sufficiently put a defen
 
 *560
 
 dant on notice that an officer is attempting to make an investigatory stop or an arrest. In this case, however, the State produced no evidence that Appellant even knew the officer was pursuing him. Specifically, there was no evidence of the duration of the flight, any verbal or nonverbal communication between Appellant and the officer, or any other factor that could support an inference that Appellant knew the officer had attempted to make contact with him after he began to run. The only basis the State had to support the charge of insisting an officer without violence was the fact that Appellant fled. Because this fact was the final factor necessary to trigger a reasonable suspicion to initiate a
 
 Terry
 
 stop in the first place, it could not be used as the sole evidence that Appellant resisted the officer. The State has conceded this much. Accordingly, we reverse the denial of Appellant’s motion for judgment of acquittal as to the charge of resisting an officer without violence and remand with directions to the trial court to vacate that conviction and sentence. In all other respects, this appeal is affirmed.
 

 AFFIRMED in part; REVERSED in part; and REMANDED with directions.
 

 WOLF and KAHN, JJ, concur.
 

 [1]
 

 . The Third District went a step further in
 
 D.T.B.,
 
 suggesting that a fleeing person may not be convicted of resisting an officer without violence even after he has refused a lawful command to stop. See 892 So.2d at 524-25 (noting that while tire officers would have been justified in detaining the defendant for a brief investigation, they should have allowed the defendant “to go on his way,” even though the facts of the case indicate that the officers never successfully detained him). Because the officer in the instant case did not command Appellant to stop, we express no opinion regarding this portion of the
 
 D.T.B.
 
 court's holding.