GERBER, J.
The state appeals from the circuit court’s order granting the defendant’s motion to suppress cocaine found on the defendant. The state argues that the defendant’s flight from the back of a house, immediately after a drug transaction occurred in the front of the house, along with the arresting officer’s concern that the defendant was the person who engaged in the drug transaction, established reasonable suspicion to warrant an investigatory stop. We agree and reverse.
*90 Two detectives testified at the suppression hearing. The first detective testified that he and a confidential informant drove up to a man in a convenience store parking lot. They asked the man where they could buy drugs. The man said he would take them someplace. The man jumped in the back of their vehicle and directed them to a house. They parked across the street from the house and gave money to the man. The man got out of the vehicle and appeared to buy cocaine from a woman sitting on the house’s front porch. As the man conducted the buy, the first detective, speaking over the radio to backup officers, including the second detective, described the man and the woman. The first detective described the man as “an older guy, skinny,” wearing a T-shirt and jeans. After the man completed the buy and was walking back to the vehicle, the first detective told the backup officers that they should move in to arrest him.
The second detective testified that he heard the first detective over the radio describe the man as “an older male, skinny or slim.” The second detective also heard the first detective tell the backup officers to move in. At that point, the second detective drove his vehicle to the back of the house. The second detective then described what occurred as he was pulling up to the back of the house:
SECOND DETECTIVE: As I am pulling up to the back of the house, I exit my vehicle, see vehicles coming from north and south towards the front of the structure. I hear vehicles stop. I hear people get out. And I get out of [the] car. Seconds later, I see the back door fly open and the defendant ran out the back door.
STATE: And what were you wearing at this point?
SECOND DETECTIVE: My [sheriffs office] tactical uniform, says “Sheriff’ written in big letters on the front of my vest.
STATE: So you see a door burst open and someone runs out back?
SECOND DETECTIVE: Yes.
STATE: And what do you do?
SECOND DETECTIVE: He comes out back, sees me, tries to get back inside. At this point, he is about two feet from me. I grab the arm and that point, I was trying to find out what his reason was for coming out the back door. STATE: So what do you do?
SECOND DETECTIVE: Start conversation with him, very cooperative. Wasn’t being rude or anything. Told me he saw raiders in the front of the house.
STATE: What does raiders mean? SECOND DETECTIVE: Raiders is just street language for the street narcotics crime unit.
STATE: So at this point, what do you say?
SECOND DETECTIVE: Start talking to him, like I said, asked if he had anything on him, something to that effect. He said, you can check. I got nothing on me.
[[Image here]]
STATE: What do you do at that point? SECOND DETECTIVE: Went ahead, searched him for weapons, narcotics, anything like that based on the fact he gave consent. I found a small baggie of cocaine.
STATE: Why did you stop him when he ran out of the house?
SECOND DETECTIVE: I wasn’t sure if that was the male that [the first detective] said was sitting in the back of the truck. When I saw the units pulling up to initiate the arrest, I got out, ran around the house. I don’t know if he fit *91 the description of an older black male [which the first detective] gave out. Didn’t know if he was in custody or not at that point.
On cross-examination, the second detective testified he could not remember whether the defendant’s clothing matched the first detective’s description of the man involved in the drug transaction. The second detective also testified that the first detective did not describe the man by years of age. The second detective further testified that he did not recall hearing anything over the radio about any of the suspects running away.
The defendant argued that the circuit court should suppress the cocaine because the second detective did not observe circumstances sufficient to form a reasonable suspicion that the defendant committed a crime. The defendant also argued that his consent to the search was mere acquiescence to the exercise of police authority. The state responded that the second detective had a reasonable suspicion that the defendant was the man involved in the drug transaction because of his appearance and because he ran from the house where the drug transaction occurred. The state also responded that the defendant voluntarily consented to the search. In reply, the defendant argued it was not reasonable for the second detective to suspect that he was the man involved in the drug transaction because the drug transaction occurred on the house’s front porch, and because the second detective could not remember whether the defendant’s clothing matched the first detective’s description of the man involved in the drug transaction.
The circuit court granted the motion to suppress as follows:
I have read through the various cases presented by the State and the key factor is, again, whether or not there is an articulable suspicion or facts supporting suspicion that criminal activity was taking place [and] that the defendant was involved in criminal activity.
The facts presented in our case is that this whole buy-bust transaction occurred outside the residence. At no time was there any testimony by [the first detective] or by [the second detective] ... that any of the suspects entered the residence. Indeed, the only male that was involved in that drug transaction was either in or around the police vehicle. And the key is what facts are artic-ulable. And based upon the facts of the drug transaction, there is absolutely no evidence that [the defendant] was involved in that transaction nor was there any evidence to suspect that. The only suspicion is that [the second detective] approaching from the back sees [the defendant] exit the back door and [the defendant], instead of running away, simply goes back into the residence.
Clearly, [the second detective] grabbing the defendant constitutes a stop. This is not a consensual encounter. So the question is, does the mere fact that the defendant is exiting this residence from the rear when there is an arrest or a drug transaction outside the residence in the front of the residence and where the male suspect was already secured in or by the police car, and granted, [the second detective] may not have had very good communication with other officers involved in the operation, but the mere fact that there is a black male involved in the front with no information of any black male fleeing or going into the residence, the court does not find that that justifies the stop of [the defendant].
The court is also taking into account the totality of the circumstances and is not convinced as well .that this was truly a consent situation and not simply an acquiescence to police authority or exer *92 cise of police authority. That’s a secondary ground.
After the circuit court entered a written order granting the motion to suppress, the state filed this appeal. We defer to the circuit court’s factual findings, but apply the de novo standard of review to the circuit court’s legal conclusions. Nshaka v. State, 82 So.3d 174, 178-79 (Fla. 4th DCA2012).
We conclude that the second detective had reasonable suspicion to justify an investigatory stop. When reviewing courts make reasonable suspicion determinations, they must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). “[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.” Id. at 274, 122 S.Ct. 744. “[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.” Illinois v. Ward-low, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
In Wardlow, the United States Supreme Court held that a defendant’s flight upon seeing the police patrolling an area known for heavy narcotics trafficking supported reasonable suspicion that the defendant was involved in criminal activity and justified an investigatory stop. Id. at 124, 120 S.Ct. 673. The Court reasoned: “Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Id. The Court further reasoned: “Flight, by its very nature, is not ‘going about one’s business’; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the [individual] and investigate further is quite consistent with the individual’s right to go about his business or to stay put and remain silent in the face of police questioning.” Id. at 125, 120 S.Ct. 673.
Following Wardlow, the first district held in Parker v. State, 18 So.3d 555 (Fla. 1st DCA 2008): “Since Wardlow, flight has taken on a more significant role in the determination of the reasonableness of an investigatory stop. Even so, flight is still merely one factor that may be considered in such a determination and is not sufficient in itself to justify an investigatory stop. There must be some additional factor or factors, which, when combined with flight, would give rise to a reasonable suspicion that criminal activity is afoot.” Id. at 558 (internal citations omitted). For example, “flight may give rise to a reasonable suspicion of criminal activity even when the flight does not take place in a high-crime area, depending on the remaining circumstances of the case.” Id. at 558-59.
Here, additional factors existed which, when combined with the defendant’s flight, gave rise to a reasonable suspicion of criminal activity. The first detective, over the radio, stated that a drug transaction occurred in the front of the house, described the suspect, and told the backup officers that they should move in and arrest him. The second detective heard this information. Immediately thereafter, the defendant fled from the back of the house, saw the second detective, and tried to go back inside the house. The second detective did not know whether the defendant was the suspect from the front of the house, and so he stopped the defendant to investigate. The foregoing circumstances give rise to a reasonable suspicion of criminal activity even though *93 the second detective did not know whether the defendant was the suspect from the front of the house. See Parker, 18 So.3d at 559-60 (reasonable suspicion existed where, after the police received a domestic battery complaint, the arresting officer saw the defendant and another man one block away at 3:00 a.m. on an otherwise empty street, and when the officer shined a spotlight in their direction, they both ran); Sinclair v. State, 816 So.2d 149, 150 (Fla. 1st DCA 2002) (reasonable suspicion existed where, after the police received a prowling complaint, the arresting officer saw the defendant approximately an hour- and-a-half later at 2:00 a.m. walking along a road he could have reached from the neighborhood where the prowling complaint originated, and when the defendant saw the officer’s patrol vehicle, he began walking in the opposite direction).
We also conclude that the defendant’s consent to the search was not simply an acquiescence to police authority. According to the second detective, he asked the defendant “if he had anything on him.” The defendant responded, “you can check. I got nothing on me.” In other words, the second detective did not request to search the defendant; the defendant volunteered to be searched. Because the circuit court did not question the second detective’s credibility in its factual findings, and because the court’s factual findings only mentioned the circumstances surrounding the investigatory stop, the court erred in its legal conclusion that the defendant’s consent was simply an acquiescence to the exercise of police authority. See Gonzalez v. State, 59 So.3d 182, 186 (Fla. 4th DCA 2011) (“Generally, the fact that a defendant has been taken into custody or otherwise detained is not sufficient to constitute coercion and render consent involuntary as a matter of law.”) (citations omitted); I.R.C. v. State, 968 So.2d 583, 586 (Fla. 2d DCA 2007) (“The circumstance that consent is given by an individual who is under arrest or otherwise detained does not establish that the consent was involuntary. The fact of custody alone has never been enough in itself to demonstrate a coerced ... consent to search.”) (citation and internal quotations omitted).
In sum, the totality of the circumstances presented to the second detective gave him reasonable suspicion to stop and investigate the defendant. To paraphrase the United States Supreme Court, as stated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968): “It would have been poor police work indeed for [the] officer ... to have failed to investigate this behavior further.” Id. at 23. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

TAYLOR and CIKLIN, JJ., concur.