DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**RICHARD SCOTT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4622

[November 26, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos S. Rebollo, Judge; L.T. Case No. 11003069CF10A.

Carey Haughwout, Public Defender, and Narine N. Austin, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Allen R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, C.J.

Richard Scott appeals his judgment and sentence for one count of resisting arrest without violence. He argues that the trial court erred in denying his motion for judgment of acquittal because the state failed to establish that the arresting officers were legally performing an investigatory stop. We agree and reverse.

At Appellant's trial, the state presented the following evidence. On the day of Appellant's arrest, two officers were conducting surveillance on a residence for the purpose of executing an arrest warrant on a man by the name of R.Q. During the course of their surveillance, the officers saw Appellant exit the house wearing a full-face motorcycle helmet. The officers approached Appellant to determine whether he was the man they were looking for, at which point Appellant took off his helmet and gave the officers his name. The officers were unable to confirm Appellant's identity in their system so Appellant invited them inside the residence while he looked for his driver's license. Appellant could not find his license, so he and the officers went back outside. The officers then asked Appellant to

have a seat on the porch while they tried to confirm his identity. A few minutes later, Appellant walked back into the house and locked the door.

Fearing that Appellant was trying to run, the officers went around the house where they saw Appellant exit, jump the fence, and flee. The officers pursued, caught, and arrested Appellant. The officers later determined that they were unable to immediately verify Appellant's identity because the date of birth Appellant provided was off by one year. After the state rested, Appellant moved for a judgment of acquittal arguing that Appellant was in a consensual encounter with the officers and, therefore, had every right to end the encounter however and whenever he wanted. The court denied the motion. This appeal follows.

In moving for a judgment of acquittal, a "defendant . . . admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence. We must review the record to determine whether there is sufficient evidence to support the jury's verdict." *Blue v. State*, 837 So. 2d 541, 547 (Fla. 4th DCA 2003) (internal citations omitted).

"For a conviction for resisting an officer without violence, the State must show that: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty." *Id.* at 547 (citing *Slydell v. State,* 792 So. 2d 667, 671 (Fla. 4th DCA 2001)). "Examples of the lawful execution of a legal duty include: 1) serving process; 2) legally detaining a person; or 3) asking for assistance in an emergency situation." *A.R. v. State*, 127 So. 3d 650, 654 (Fla. 4th DCA 2013).

The State concedes that the officers were performing an investigative stop of Appellant when he fled and thus this case comes down to whether the stop was legal. Under Florida's "Stop and Frisk Law," a law enforcement officer may perform an investigative stop "under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a [criminal] violation." § 901.151(2), Fla. Stat. (2010). When considering whether such a stop is justified, we "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *State v. Lewis*, 98 So. 3d 89, 92 (Fla. 4th DCA 2012). "'[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Id.* (quoting *United States v. Arvizu,* 534 U.S. 266, 274 (2002)). "'[T]he determination of reasonable suspicion must be based on commonsense judgments and

inferences about human behavior.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

We rely on the Second District's decision in *Rios v. State*, a strikingly similar factual scenario, in which the court held that the officers did not have a reasonable suspicion to support their investigatory stop. 975 So. 2d 488, 491 (Fla. 2d DCA 2007). There, two officers went to the address associated with a man they had a warrant to arrest. *Id.* at 489. Upon arriving at the address, they encountered the defendant, who told them that he was the brother of the man they were looking for. *Id.* The officers asked the defendant for identification, which he indicated was with his wife inside the house. *Id.* The officers detained the defendant while waiting for his wife to produce his identification, eventually patting him down and discovering drugs on his person. *Id.* Although the defendant turned out not to be the man the officers were looking for, he was arrested for possession. *Id.* The defendant moved to suppress the drugs found on his person, arguing that they were found as the result of an illegal stop. *Id.* In determining that the drugs should have been suppressed, the Second District reasoned:

> [T]here was no testimony as to present criminal activity in which [defendant] might have been engaged or potential future criminal activity; indeed, criminal activity during these timeframes was not an issue at all. Moreover, the only potential source of reasonable suspicion as to past criminal acts in which [defendant] might have engaged was the activity for which his half-brother [] was to be arrested pursuant to the arrest warrant**. However, "[t]he existence of an arrest warrant is of no moment on the question whether a particular person police officers come across is in fact the subject of the warrant.** The warrant supplies the officers with probable cause to arrest the person it names and describes, not a license to duck the reasonable suspicion requirement and stop someone they only have a subjective hunch is that person."

*Id.* at 491 (quoting *U.S. v. Hudson,* 405 F.3d 425, 439 n.9 (6th Cir. 2005)) (emphasis added).

Here, like in *Rios,* there was no testimony that the officers suspected Appellant was engaging in or was going to engage in criminal activity. There was not even testimony that Appellant looked like R.Q. or that the officers believed he was R.Q. for any objective reason. Rather, as the State concedes, the officers' entire basis for stopping Appellant was that he "was

walking out of a residence where the person they were seeking to arrest was known to reside." As established by *Rios*, the mere fact that a person is at the residence associated with a suspect with a pending arrest warrant does not in itself justify an investigative stop.

*Reversed.*

STEVENSON and GROSS, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**