IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DARIUS LAMAR GRAYSON,

        Appellant,

v.

Case No. 5D15-3128

STATE OF FLORIDA,

        Appellee.

_____/

Opinion filed February 24, 2017

Appeal from the Circuit Court
for Brevard County,
Robin C. Lemonidis, Judge.

James S. Purdy, Public Defender, and
Thomas J. Lukashow, Assistant Public
Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kaylee D. Tatman,
Assistant Attorney General, Daytona
Beach, for Appellee.


EDWARDS, J.

     Appellant raises three issues on appeal from two related cases. In one case, he

was convicted, following a jury trial, of burglary of a dwelling and third-degree grand theft

(property valued at more than $300 but less than $20,000). In the second case, he

pleaded guilty, after losing the first trial, to attempted burglary of an occupied dwelling and grand theft (property valued at more than $300 but less than $20,000).[1]

<u>Background Facts</u>

On the night of Appellant's arrest, one resident of the burglarized house went downstairs at approximately 2:00 a.m. He did not observe anything out of place. He went back downstairs around 2:30 a.m. and noticed that a previously closed sliding glass door was half-way open and several kitchen drawers were opened. The resident alerted others in the house, and they quickly determined that car keys, a backpack with nursing school textbooks, a laptop computer, two iPads, a Kindle Fire tablet, several gaming systems, and a Prada purse were missing from the home.

The victims called the police and reported that the burglary had occurred within thirty minutes of their call. Several police cars responded to the call because the neighborhood was recently plagued with residential burglaries. Within minutes of the call, one police car reported to the victims' house. Other police cars surrounded the neighborhood in an attempt to intercept any suspects leaving the area. Two officers in a patrol car drove to an adjacent public ball field and parked on the other side of a wood line separating the field from the victims' neighborhood in case the burglar or burglars escaped through the woods. The ball field was closed at that time of night.

Within approximately two minutes of arriving at the ball field, the police officers saw the silhouette of a single person walking in and out of the wood line. The individual, who was later identified as Appellant, was approximately 150 yards away when first spotted

---

[1] When pleading guilty in the second case, Appellant reserved his right to appeal the denial of his motion to suppress, which was deemed dispositive.

by the police. Given the low light and distance, the police could not observe whether Appellant was carrying burglar tools, disguises, or any stolen property. Appellant was not coming from the specific direction of the victims' house; however, he was coming from the direction of their neighborhood.

The two police officers crouched down until Appellant neared. They then stood up, shined flashlights toward Appellant, and said, "Police Department. Stop!" Appellant ran a short distance, where he got stuck in thick brush. One of the officers recognized Appellant from previous encounters and called out his name. Appellant did not resist the officers when they approached him in the brush. After detaining Appellant, the officers located a set of car keys, a cigarette lighter, a pack of cigarettes, a Nintendo GameCube console, a television remote control, and other personal property on the ground where Appellant was standing. Those items all came from the victims' house. The officers also recovered a glove from the area.

The officers arrested Appellant, who was wearing a black hat, a black top, and black pants, for loitering, prowling, and resisting arrest without violence. They handcuffed him and read him his Miranda rights. Aside from Appellant, the responding officers did not encounter any other individuals in the area. In addition to the items found at Appellant's feet, police found other property in the victims' yard which had been stolen from inside the house. No useful fingerprints or DNA were recovered from the victims' house or any of the stolen items.

After his arrest, Appellant spoke with police in a videotaped interview. He said he was visiting a friend in the victims' neighborhood and had begun walking to his brother's

3

house, located several miles away, when he was apprehended.  He explained that he cut through the wood line to avoid the police because they always bother him.

In his interview, Appellant stated that he saw three young men, dressed in black, walking behind a house in the neighborhood.  He suggested that those three men committed the burglary.  Appellant admitted that he walked through several backyards, peeked inside one screen door, and entered the porch of one house. He also admitted he needed money but denied stealing any personal property.  He informed the officers that if, hypothetically, he had stolen property, he would not have taken the items to a pawn shop but instead would have sold the items to his friends.

At trial, the State presented the testimony of the responding officers and the victims.  It also played Appellant's recorded interview with the police. Appellant did not testify at trial.  The residents could not identify Appellant as the burglar.  Appellant moved for a judgment of acquittal ("JOA"), which was denied.

### Motion to Suppress

The first issue on appeal is whether Appellant's seizure was legal.  "While the test to be applied to factual findings of the trial court in this regard is whether competent, substantial evidence supports those findings, the trial court's application of the law to the facts is reviewed de novo." *Pritchard v. State*, 987 So. 2d 204, 205 (Fla. 5th DCA 2008) (citations omitted).  The trial judge denied the motion to suppress, noting that a nearby home was burglarized thirty minutes earlier and that Appellant was roaming in and out of the wood line at 3:00 a.m. near a neighborhood that experienced a recent rash of burglaries.  According to the police, no other suspects were encountered, and it was unusual to encounter anyone walking through the ball field at that time of night.  The fact

4

that Appellant ran back into the woods as soon as the officers identified themselves also contributed to the officers' suspicion.

The issue presented on the motion to suppress is whether the events, circumstances, and police observations created an articulable, well-founded suspicion of Appellant's involvement in criminal activity or whether the seizure was simply a well-played hunch. *Turner v. State*, 552 So. 2d 1181, 1182 (Fla. 4th DCA 1989). "In determining whether an officer had a reasonable suspicion of criminal activity, courts consider the totality of the circumstances." *Parker v. State*, 18 So. 3d 555, 558 (Fla. 1st DCA 2008) (citing *Huffman v. State,* 937 So. 2d 202, 206 (Fla. 1st DCA 2006)). "Relevant factors include 'the time of day; the appearance and behavior of the suspect . . . and anything incongruous or unusual in the situation as interpreted in light of the officer's knowledge.'" *Id.* (alteration in original) (quoting *Huffman*, 937 So. 2d at 206).

Many cases have discussed what consideration should be given to a defendant running from the police when determining the legality of an investigatory stop. In *Illinois v. Wardlow*, 528 U.S. 119, 123-25 (2000), the United States Supreme Court held that unprovoked flight in a high crime area can provide grounds for reasonable suspicion to justify an investigatory *Terry* stop.[2] While flight is "not necessarily indicative of wrongdoing . . . it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. "[U]nprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature is not 'going about one's business'; in fact it is just the opposite." *Id.* at 125.

In *Parker*, the First District held that once the defendant "began to run, [police] had a reasonable suspicion to conduct an investigatory stop, based on the additional

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

5

factors of the time of night, the emptiness of the street, and the recent occurrence of a crime in the near vicinity." *Parker*, 18 So. 3d at 559. "Flight, in itself, is insufficient to support a reasonable suspicion of criminal activity." *Id.* at 558 (citing *S.G.K. v. State*, 657 So. 2d 1246, 1248 (Fla. 1st DCA 1995)). "Nonetheless, flight can be one factor, among others, that contributes to an officer's reasonable suspicion of criminal activity." *Id.* (citing *Blue v. State*, 837 So. 2d 541, 546 (Fla. 4th DCA 2003)). "Flight can support a resisting [arrest without violence] charge if the [S]tate proves that (1) the officer had an articulable well-founded suspicion of criminal activity that justifies the officer's detention of the defendant, and (2) the defendant fled with knowledge that the officer intended to detain him or her." *V.L. v. State*, 790 So. 2d 1140, 1142-43 (Fla. 5th DCA 2001) (citations omitted).

Similarly, in *Sinclair v. State*, 816 So. 2d 149, 150-51 (Fla. 1st DCA 2002), with two judges concurring and one dissenting, the First District held that an articulable well-founded suspicion existed for a *Terry* stop when the defendant was spotted in the area of the crime around the time the crime was committed, the defendant changed his direction of travel when he first saw the police and again when one of the officers indicated that he wanted to speak with the defendant, and the responding officers did not observe any other individuals in the area. Although the facts of this case present a close call, we agree with the trial court that there was a reasonable suspicion to justify an investigative stop. Thus, the motion to suppress was properly denied.

Denying Motion for JOA

Second, Appellant argues that the trial court erred in denying his motion for JOA. In moving for a JOA, the "defendant admits not only the facts stated in the evidence, but

6

also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence." *State v. Odom*, 56 So. 3d 46, 49 (Fla. 5th DCA 2011). We have carefully reviewed the record and find that there was sufficient evidence introduced at trial to submit the case to the jury. Therefore, the motion for JOA was properly denied.

Ineffective Assistance of Counsel

Third, Appellant claims that the State did not sufficiently prove that the value of the stolen property exceeded $300 and that defense counsel was ineffective for failing to move for a JOA as to the third-degree grand theft charge. He contends that if the motion was granted, he would have been convicted of petit theft, which carries a shorter sentence. "Claims of ineffective assistance of counsel are generally not reviewable on direct appeal." *Gordon v. State*, 126 So. 3d 292, 294 (Fla. 3d DCA 2011). However, claims of ineffective assistance of counsel may be raised on appeal if ineffectiveness is obvious on the face of the appellate record and the prejudice caused by the conduct is indisputable. *See Larry v. State*, 61 So. 3d 1205, 1207 (Fla. 5th DCA 2011).

Several victims provided testimony related to the value of the stolen property. The relevant testimony included that that the iPads were recently purchased, the laptop cost $400, the backpack cost $100, the Kindle Fire cost $200, the PlayStation cost $300, the Prada purse was valued between $350 and $900, and a replacement smart car key would cost between $100 and $200, plus an additional cost to have the car rekeyed. The victims also testified to the accuracy of photographs depicting the stolen property recovered by police outside the victims' house. While the proof of value of each item could have been more detailed to include the condition of each item when stolen, the evidence was sufficient to permit a jury to find that the total value of the stolen property exceeded $300.

We conclude that a motion for judgment of acquittal on that point would not have been granted; thus, there was no ineffective assistance of counsel and no prejudice to Appellant. Furthermore, because this claimed ineffective assistance of counsel is not clear on the face of the record, it should be raised, if at all, in a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. However, having now carefully considered this fully briefed claim of ineffective assistance of counsel raised by Appellant, we deny it on the merits.

AFFIRMED.


ORFINGER, J., and JACOBUS, B.W., Senior Judge, concur.